**JELINEK, Appellant and Cross–Appellee,**

v.

**ABBOTT LABORATORIES et al., Appellees and Cross–Appellants.**

[Cite as *Jelinek v. Abbott Laboratories,* 164 Ohio App.3d 607, 2005-Ohio-5696.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–614.

Decided Oct. 27, 2005.

608

Law Offices of Russell A. Kelm, Russell A. Kelm and Joanne W. Detrick, for appellant and cross-appellee.

Vorys, Sater, Seymour & Pease L.L.P., Michael G. Long and Lisa Pierce Reisz; Mayer, Brown, Rowe & Maw L.L.P., Andrew L. Frey, and Sanford I. Weisburst, for appellees and cross-appellants.

PETREE, Judge.

{¶ 1} On September 10, 1999, plaintiff-appellant, David A. Jelinek, refiled a complaint in the Franklin County Court of Common Pleas against Abbott Laboratories, Ross Products Division, Joy A. Amundson, Thomas M. McNally, William H. Stadtlander, Karl V. Insani, Gregory A. Lindberg, and James L. Sipes. The complaint set forth claims for relief of promissory estoppel, age discrimination in violation of R.C. 4112.02(A) and 4112.99, retaliation in violation of R.C. 4112.02(I) and 4112.99, violation of public policy, and spoliation of evidence.

{¶ 2} On July 31, 2000, the defendants filed a motion for summary judgment as to all claims. Plaintiff filed a memorandum in opposition to the motion, and the

defendants filed a reply. On January 23, 2001, the trial court rendered a decision granting defendants' motion for summary judgment and entered judgment in favor of defendants on February 12, 2001. Plaintiff appealed from this entry to this court, contending that the trial court had erred in granting defendants' motion for summary judgment as to the claims of age discrimination, promissory estoppel, constructive discharge, and retaliation and wrongful discharge in violation of public policy.

{¶ 3} On September 13, 2001, this court issued an opinion reversing the trial court's judgment regarding plaintiff's claims of age discrimination, promissory estoppel, and constructive discharge. *Jelinek v. Abbott Laboratories* (Sept. 13, 2001), Franklin App. No. 01AP–217, 2001 WL 1045534 (*"Jelinek I"*). This court essentially determined that genuine issues of material fact remained as to the claims for age discrimination, promissory estoppel, and constructive discharge. Relating to the age-discrimination claim, this court, in *Jelinek I,* stated as follows:

Ross eliminated all of the district manager positions as part of a larger business plan. [Plaintiff was a primary-care district manager at the time the position was eliminated.] According to Mr. Lindberg's April 27, 1999 affidavit, Ross attempted to place the former district managers in their respective regions in order to save on relocation expenses. However, Mr. Lindberg stated that appellant and Mr. Schlies were offered positions that required them to transfer, and the Lake County, Indiana territory was the only open sales territory in appellant's region. Mr. Schlies had been the district manager in the Chicago territory and was offered a position in Memphis, Tennessee.

Construing the evidence most strongly in favor of appellant, we determine that there are genuine issues as to whether appellees' actions with regard to appellant's transfer were discriminatory. Appellant put forth evidence that of the eight district managers, he had the most years of service and was the oldest. Ross stated that it attempted to keep the former district managers in their respective regions. However, Mr. Schlies, who was not in the protected class, was moved from the Chicago area to Memphis, Tennessee. The Lake County, Indiana territory was geographically closer to Mr. Schlies's former territory than Memphis. There is no explanation in the record as to why Mr. Schlies was offered the comparable position in Memphis and not appellant, who had more seniority. For purposes of summary judgment and drawing all reasonable inferences in favor of appellant, appellant has shown genuine issues of fact as to his claim against appellees for age discrimination.

{¶ 4} In *Jelinek I,* this court affirmed the trial court's granting of defendants' motion for summary judgment as to plaintiff's claim of retaliation and wrongful discharge in violation of public policy. The cause was accordingly remanded to the trial court to conduct further proceedings consistent with the opinion.

Plaintiff filed an application for reconsideration, which this court denied. The Supreme Court of Ohio declined jurisdiction to hear the case. *Jelinek v. Abbott Laboratories* (2002), 94 Ohio St.3d 1431, 761 N.E.2d 47.

{¶ 5} Plaintiff's remaining claims were thereafter tried to a jury from April 8 to April 29, 2002. The following evidence was presented at trial.

{¶ 6} Plaintiff, born May 15, 1942, began his career at Ross, a division of Abbott Laboratories, in 1967 as a salesman, or a "territory manager," and over the next 30 years he was employed in various positions with Ross, including working as a district manager in Syracuse, New York, as a district manager in Atlanta, Georgia, and as a national sales manager. The geographic framework for sales for Ross operates under regions, districts, and territories. Regions comprise districts and districts comprise territories. Plaintiff left Ross for about nine months in 1970 and then returned to work for Ross. Plaintiff held "quite a few" different positions at Ross, and his changes in position were not necessarily due to promotions. For example, he had moved laterally and had changed positions from a district manager to a sales representative. In 1987, plaintiff moved back to Columbus and was the national sales manager for a sports nutritional drink called "Exceed." In early 1997, plaintiff became a primary-care district manager ("PCDM") in Columbus. He was one of seven PCDMs. At trial, "primary care" was characterized as "calling on physicians." Plaintiff testified regarding a five-year commitment for his PCDM position. During his employment with Ross, plaintiff consistently received good evaluations. Phil Pini, a former supervisor of plaintiff, described him as an "outstanding" employee who was "conscientious."

{¶ 7} Plaintiff testified that after he assumed the PCDM position, he received an announcement in the summer of 1997 regarding the collapsing of territories by the company. Plaintiff described the collapsing of a territory as the dissolving of a territory. Plaintiff further explained, "You eliminate the salesman's base in that territory. And then you take that territory and assign it to other salesmen around that territory. So, you continue to generate sales, but you don't have a person responsible just for that piece of geography by itself. It is shared by other people." According to plaintiff's testimony, the Gary, Indiana territory (also known as the Lake County, Indiana territory), which was part of the Columbus region and was contained within the Indianapolis, Indiana district, had been collapsed. Plaintiff testified that Charlie Fisher, a regional manager, informed him that a large part of geography of the Gary territory had been given to a salesman in South Bend, Indiana. According to plaintiff's testimony, the Lake County area, which included Gary, was placed in the Chicago region, and the Memphis, Tennessee area was placed in the Columbus region. According to plaintiff, this switch occurred in conjunction with the collapse of the Gary

territory. Plaintiff testified that the reason for this move was to "keep balance in the areas." At the time these changes occurred in July 1997, they did not affect plaintiff or his job. At some point, plaintiff was aware that there was going to be "downsizing."

{¶ 8} Karl Insani, who had been a vice president of sales at Abbott Laboratories, testified that in July 1997, Gary was part of the Columbus region, and Memphis was part of the Chicago territory that summer. Insani added that the Gary territory had gone back and forth between the Columbus and Chicago regions. Gary is much closer geographically to Chicago than it is to Columbus, Ohio. Also, Steve Schlies was a PCDM in Milwaukee, Wisconsin. According to Insani, Schlies, who was living in Milwaukee or a surrounding area, would have had to move to the Gary territory in order to cover it.

{¶ 9} Monte Hinchman, who became the district manager of the Chicago district on July 1, 1997, testified at trial. At the time he became the district manager, the Lake County territory was not part of that Chicago district. Hinchman testified that the Gary territory was assigned to him around December 1997. When the Gary territory was assigned to Hinchman, it consisted primarily of Lake County, Indiana, and Kankakee County, Illinois. Hinchman testified that the Lake County territory was not collapsed but was a "viable, open territory." However, when Hinchman received the Lake County territory, it was "vacant." Michelle Lynch, the sales representative who had covered the Lake County territory, transferred to a sales representative position in the territory that Hinchman had covered prior to his promotion to district manager.

{¶ 10} The PCDM position was eliminated in October 1997. However, the individuals who were formerly PCDMs retained employment with Ross. According to the testimony of Insani, the decision to eliminate the PCDMs' positions and redeploy individuals was related to budgetary constraints. According to Lindberg, these individuals remained with Ross because they were "outstanding employees." The sales representatives who had been reporting to the PCDMs began reporting to the full-line district managers when the PCDM positions were eliminated. According to Lindberg, that was the practice prior to the creation of the PCDM positions.

{¶ 11} Testimony at trial supported the idea that when redeployment occurred, the preference was to reassign employees to their home areas, that is, in the same region and same district. Insani testified that this was the preference because it supported consistency with the customers and reduced relocation expenses, which Ross would pay. Insani added, "Sometimes there is geography that is closer that is outside the region * * *." On this issue, Insani further testified as follows:

Q. In doing redeployments you would always have a preference for moving someone to someplace that is closer rather than further away, wouldn't you?

A. If the closer territory had as much potential as the further away territory. Because the other thing you have to judge * * * is if you are given two cities, it is which one do I desperately need someone in. You weigh that, too.

Q. So, the needs of the territory would dictate somewhat.

A. Yes, needs, business needs, I guess you can call it, unless you have another term.

Q. When you talk about business needs, would you want to put your best salesman in the best territory or the worst territory?

A. That is really a judgment call.

Q. It is a tough question, isn't it?

A. Yes; it could go both ways. It depends on the personality of the salesperson, and the area that you are going to put him in.

Q. You certainly don't want to lose a good salesman by putting him in a rotten territory, do you?

A. Define "rotten," and I would say yes.

Q. A bad territory, or he is not going to make sales, or bonus and is going to be unhappy with his compensation.

A. You don't want to make him unhappy, no.

Q. By the same token, you would like to put your best salesman in a low performance territory and try to turn it around.

A. Yes.

Q. It is a balancing act.

A. Yes.

{¶ 12} Insani testified that he decided that plaintiff would be offered the position in Gary. Insani testified that he told his regional managers and others that he did not expect plaintiff to take the Gary territory. Greg Lindberg, who took over the vice president of sales position from Insani,[1] also testified regarding the position that was made available to plaintiff. When he was asked who had decided to give plaintiff the Gary territory, Lindberg responded as follows:

Maybe if I could just review, basically, how we handled it from a regional manager's perspective. We basically asked each regional manager to be

---

**1.** Prior to assuming the position of vice president of sales, Lindberg had reported to Insani as the financial director of field sales.

responsible for making sure their primary care district manager had a position. So, the first place to look would be within their own region.

Now, in this particular situation the only vacant territory in the Columbus region, which also was going to be eliminated, was the Gary, Indiana territory.

Lindberg testified that he played a role in the reduction in force and the redeployment of employees in 1997. Lindberg also testified that Charlie Fisher was the regional manager for plaintiff during this time. Regarding the extent that Fisher was involved in deciding where to place plaintiff, Lindberg testified as follows:

I am not sure that I would characterize it that [Fisher] was actively a part. [Fisher] knew that we were * * * placing the primary care district managers within their region where they had vacancies.

That is something that we had communicated to the regional managers. It was kind of a forgone conclusion that if that was the only vacancy, then that is where the primary district manager would be redeployed to.

{¶ 13} Plaintiff thought that his job was going to be eliminated in connection with an early October 1997 meeting. At the October 3, 1997 meeting involving plaintiff and his employer, plaintiff arrived with his lawyer. The meeting was canceled because Lindberg said that he could not meet with plaintiff and his lawyer without an Abbott lawyer present. Lindberg testified that the plan for the meeting was to discuss plaintiff's relocation to the Gary territory. According to Lindberg, the Gary territory was the only vacant territory in the Columbus region. The meeting was not rescheduled. Plaintiff testified that he brought a lawyer to the meeting because he thought the issues discussed at the meeting were going to affect his employment with Abbott. He thought he was "going to be forced out of Ross." Plaintiff was 55 years old at the time.

{¶ 14} Counsel for Abbott sent a letter to counsel for plaintiff indicating that if plaintiff was unwilling to meet with his managers without his counsel present, then his managers would communicate with him in writing regarding the subject of the previously scheduled meeting. Plaintiff was also informed that his district job was being eliminated and that he had the option to go to Gary as a medical-nutritional representative or to accept an outplacement program and receive 39 weeks of compensation.

{¶ 15} Plaintiff sought information about the Gary territory upon learning about his employment option. Plaintiff testified that he could not obtain good sales information regarding the Gary territory because it had been collapsed. Plaintiff was unable to determine the sales in Gary, but, "with a great deal of reluctance," he agreed to work there. Based on the information that he did receive, plaintiff determined that the territory "was not sales competitive."

{¶ 16} Plaintiff reported to Gary in mid-January 1998. According to plaintiff's testimony, the information he was given indicated that the Gary territory had a total sales of $1,568,000 for a period of time and that an average territory had $4,000,000 in sales. Plaintiff indicated to the district manager, Hinchman, that he did not think that the territory was competitive. Plaintiff was concerned about his pay grade and that his bonus earnings would be reduced, which would also affect his retirement annuity.

{¶ 17} According to plaintiff's testimony, Ross had a policy that salesmen were expected to live in the population mass of a territory, which was Gary. Plaintiff observed that Gary was economically depressed. Plaintiff was surprised that the major catholic hospital was closed. Plaintiff described Gary as "unsavory" and "scary." Plaintiff testified that he was concerned for his physical safety in Gary and that the city had been "voted the most dangerous town in America two years in a row." Plaintiff returned to Columbus and sent Ross a letter indicating that he felt that he had been constructively dismissed. Regarding the Gary territory, plaintiff testified as follows:

It was very obvious from the materials that were provided, and the fact that the original territory did not exist anymore, they basically were providing me with materials for two counties that had been part of a previous territory. That indeed there was no territory, no job. And the attitude of the district manager kind of completed the puzzle that, indeed, this was a sales ruse. They were trying to get me to resign. And so I felt I was constructively terminated.

According to plaintiff's testimony, relocation expenses for plaintiff to move to Gary were never requested nor approved.

{¶ 18} On a written evaluation of plaintiff, dated August 26, 1994, the following statement was made: "In his long career with Ross, [plaintiff] has had many responsible positions and now is in the twilight of his career. He wants to retire from Ross with strong self-esteem." A 1995 evaluation also states that plaintiff was "[i]n the twilight of his career." Plaintiff was 53 years old at the time of this evaluation. These evaluations were signed by plaintiff's district manager at the time, Pini, and his regional manager at the time, Tom Mack.

{¶ 19} Plaintiff testified that Steve Schlies, a former PCDM in Chicago, was assigned the Memphis territory when it was still attached to the Columbus region. According to plaintiff, Schlies was offered a district-manager position in Memphis the day he was offered the Gary position. Schlies accepted a full-line district manager position in Memphis. A full-line representative was described as a salesman who called on hospitals, nursing homes, distributors, home-care companies, and physicians. It was plaintiff's understanding that in July 1997, the Columbus region "absorbed" Memphis, and then by January 1998, Memphis was back in the Chicago region upon the elimination of the Columbus region. At

trial, Insani did not recall the Memphis area ever being in the Columbus region. Lindberg also testified that the Memphis district was never part of the Columbus region. According to Bill Stadtlander, who had been the vice president and general manager of the adult-nutritional business at Ross, the persons who decided to make Schlies a full-line district manager in Memphis were Insani, the national sales manager, and Barb Groth, the regional manager of the Chicago region.

{¶ 20} At some point in this process, plaintiff had to reduce his inventory of samples that were in his garage. Plaintiff injured his back carrying cases of samples upstairs at the Fulton County Home Health Agency in October 1997. Plaintiff testified that this had happened before and therefore he had reaggravated his back.

{¶ 21} Plaintiff also testified at trial regarding the emotional stress he was experiencing as a consequence of his employment situation. Plaintiff testified, "I felt my back injury was related to the emotional stress of this whole issue of whether I was going to be employed or not. Just not able to sleep at night. Just not sure where we were going to be. * * * It was * * * a lot of pressure, a lot of lost sleep." According to plaintiff, "It had a significant impact on me in my personal life." Plaintiff made an appointment with a psychologist, went to the office, but decided that he "just didn't want to share [his] problems," and he did not see the psychologist.

{¶ 22} Plaintiff's employment with Ross terminated on April 1, 1998. Plaintiff did not receive pay and benefit continuation.

{¶ 23} After three weeks of trial, the jury deliberated and returned a verdict in favor of plaintiff and against defendant Ross and two individual defendants, Karl V. Insani and Gregory A. Lindberg, as to plaintiff's claim for age discrimination, awarding plaintiff $700,000 in compensatory damages and $25,000,000 in punitive damages, as well as attorney fees. The jury found in favor of defendants and against plaintiff on plaintiff's claims of promissory estoppel and constructive discharge.

{¶ 24} On June 6, 2002, plaintiff moved for an award of prejudgment interest on the emotional-distress portion of the jury verdict. On the same day, plaintiff applied to the trial court to set the amount of attorney fees in accordance with the jury verdict.

{¶ 25} On June 7, 2002, defendant Abbott filed a motion for the trial court to grant a judgment notwithstanding the verdict ("JNOV"), or to conditionally order a new trial, or to order remittitur as to the damages awarded by the jury. On the same day, defendants Insani and Lindberg also filed a motion for the trial court to grant a JNOV or to grant a new trial.

**618**

{¶ 26} On May 20, 2003, the trial court rendered its decision regarding defendants Insani and Lindberg's motion for a JNOV or for a new trial and Abbott Laboratories' motions for JNOV and for a new trial, or, in the alternative, for a remittitur. In its decision, the trial court determined that regarding the compensatory damages, the jury verdict had not been influenced by passion or prejudice. However, it did find that the compensatory-damage award was "manifestly excessive to the extent that it clearly shows a misconception by the jury of its duties." It accordingly provided for a remittitur, which would reduce the award to $100,000. Similarly, the trial court found that regarding the punitive damages awarded, the verdict had not been influenced by passion or prejudice. However, the court determined that the award was excessive and accordingly provided for a remittitur, which would reduce the award to $4,000,000.

{¶ 27} On June 23, 2003, the trial court entered judgment in favor of defendant Abbott and against plaintiff on his promissory-estoppel claim and entered judgment in favor of defendants Abbott, Insani, and Lindberg and against plaintiff on his constructive-discharge claim.

{¶ 28} The trial court entered a JNOV in favor of defendants and against plaintiff on his age-discrimination claim. In the alternative, the trial court conditionally granted defendants' motion for a new trial on plaintiff's claim of age discrimination should the JNOV in favor of defendants on this issue be vacated or reversed on appeal.

{¶ 29} In the alternative, the trial court conditionally granted defendants' motion for remittitur on the amount of compensatory damages should both the JNOV in favor of defendants and the decision granting a conditional new trial on his age-discrimination claim be vacated or reversed on appeal. Defendants' motion for a new trial on the issue of the amount of compensatory damages was conditionally denied unless plaintiff rejected a remittitur of $600,000.

{¶ 30} In the alternative, the trial court conditionally granted defendants' motion for remittitur on the amount of punitive damages should both the JNOV in favor of defendants and the decision granting defendants a conditional new trial on plaintiff's age-discrimination claim be vacated or reversed on appeal. Defendants' motion for a new trial on the issue of the amount of the punitive-damages award was conditionally denied unless plaintiff rejected a remittitur of $21,000,000.

{¶ 31} In addition, the trial court entered judgment in favor of defendants and against plaintiff on his motion for an award of prejudgment interest. Lastly, the

trial court entered judgment in favor of defendants and against plaintiff on plaintiff's application to set attorney fees.

{¶ 32} Plaintiff appeals and asserts the following eight assignments of error:

I. The trial court erred in granting defendants' motion for judgment notwithstanding the verdict on plaintiff's claim of age discrimination based upon the "law of the case" doctrine.

II. The trial court erred in granting defendants' motion for judgment notwithstanding the verdict on plaintiff's claim of age discrimination.

III. The trial court erred in granting defendants' motion for remittitur.

IV. The trial court erred in excluding certain evidence related to plaintiff's constructive discharge claim which resulted in an adverse jury verdict on plaintiff's constructive discharge claim.

V. The trial court erred in excluding certain evidence on the basis of hearsay.

VI. The trial court erred in excluding evidence of a prior verdict against two of the defendants for age discrimination.

VII. The trial court erred in denying plaintiff's motion for attorneys' fees.

VIII. The trial court erred in denying plaintiff's motion for prejudgment interest.

{¶ 33} Defendants Abbott, Insani, and Lindberg cross-appeal from the trial court's judgment and assert the following three cross-assignments of error:

1. The trial court erred in concluding that the jury's verdict was not influenced by passion or prejudice and denying defendants' motion for a new trial on this ground.

2. The remitted punitive damages of $4,000,000 remain grossly and unconstitutionally excessive.

3. The remitted compensatory damages of $100,000 remain grossly excessive.

{¶ 34} Because both involve the issue whether the trial court erred in granting defendants' motion for JNOV, we will address plaintiff's first and second assignments of error together. In plaintiff's first assignment of error, he contends that the trial court erred in granting a JNOV as to his age-discrimination claim, based on the law-of-the-case doctrine. Under his second assignment of error, plaintiff argues that the trial court erred in granting a JNOV as to his age-discrimination claim.

{¶ 35} "A motion for judgment notwithstanding the verdict, like a motion for a directed verdict, tests the legal sufficiency of the evidence." *Wright v. Suzuki Motor Corp.*, Meigs App. No. 03CA2, 2005-Ohio-3494, 2005 WL

1594850, at ¶ 109, citing *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334, and *McKenney v. Hillside Dairy Co.* (1996), 109 Ohio App.3d 164, 671 N.E.2d 1291. Therefore, the trial court's granting of a motion for JNOV is reviewed de novo. *Luft v. Perry Cty. Lumber & Supply Co.*, Franklin App. No. 02AP–559, 2003-Ohio-2305, 2003 WL 21027291, at ¶ 24.

{¶ 36} R.C. 4112.02(A) provides:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶ 37} R.C. 4112.99 provides that whoever violates Chapter 4112 is "subject to civil action for damages, injunctive relief, or any other appropriate relief."

{¶ 38} Defendants argue that although plaintiff might have established a prima facie age-discrimination case, Abbott explained the difference in treatment between plaintiff and Schlies as being consistent with its "in-region reassignment policy."

{¶ 39} "In order to prevail in an employment discrimination case, the plaintiff must prove discriminatory intent." *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 583, 664 N.E.2d 1272. Discrimination may be proven by direct or circumstantial evidence. *Temple v. Dayton*, Montgomery App. No. 20211, 2005-Ohio-57, 2005 WL 38743, at ¶ 85, citing *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 672 N.E.2d 145. In order to establish a prima facie case for age discrimination, the plaintiff must establish that he is a member of a statutorily protected class, he was subject to adverse action, he was qualified for the position, and he was replaced by a person of substantially younger age. *Coryell v. Bank One Trust Co.*, 101 Ohio St.3d 175, 180, 2004-Ohio-723, 803 N.E.2d 781. The employer may demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. See *Mauzy*, 75 Ohio St.3d at 582, 664 N.E.2d 1272. The plaintiff may demonstrate that the employer's reason was merely a pretext for unlawful discrimination. Id.

{¶ 40} At trial, plaintiff retained the ultimate burden of demonstrating that he was the victim of unlawful discrimination. See *United States Postal Serv. Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403. In this case, the jury determined that defendants intentionally discriminated against him because of his age based on his transfer to Lake County, Indiana. The facts at trial revealed that plaintiff was one of seven primary-care district managers deployed throughout the country in 1997, until the PCDM position was eliminat-

ed. Ross sought to retain the individuals as employees even though the PCDM position was eliminated. In the process of redeployment, only two of the seven were offered positions requiring them to relocate: Steve Schlies and plaintiff. At the end of 1997, Schlies was 36 years old, and plaintiff was 55 years old, with approximately 30 years of experience at Ross. Plaintiff, who had been working in Columbus, Ohio, was offered a territory-manager position in the Gary territory. This was a demotion in the hierarchy of the sales structure at Ross. Schlies, who had been located in Milwaukee, was offered a lateral position as district manager in Memphis.

{¶ 41} Defendants presented evidence to support the idea that the decision to offer plaintiff the Gary position was based on legitimate, nondiscriminatory reasons. In fact, the jury found that "Defendants demonstrate[d] that the action they took in transferring Plaintiff to Lake County, Indiana was for reasons other than Plaintiff's age." However, the jury further found that plaintiff "demonstrate[d] that the reason(s) for transferring Plaintiff to Lake County, Indiana were false."

{¶ 42} Upon our review of the record, we conclude that there was legally sufficient evidence presented at trial for the jury to conclude that Abbott discriminated against plaintiff on the basis of age and that Insani and Lindberg participated in the discrimination. Therefore, we conclude that the trial court erred in granting defendants' motion for JNOV.

{¶ 43} As stated above, the trial court conditionally granted a new trial should its granting of JNOV be reversed on appeal. Significantly, in this appeal, plaintiff has not separately assigned as error the trial court's conditional granting of a new trial as to the issue of plaintiff's age-discrimination claim, but he does argue that the motion for a new trial should have been denied. Civ.R. 50(C) provides that if the motion for JNOV provided for in Civ.R. 50(B) is granted, then the court shall rule on the motion for a new trial. Thus, the trial court's decision regarding a new trial was a necessary determination, given its granting of the JNOV. Therefore, we find it necessary to address the issue whether the trial court erred in conditionally granting a new trial.

{¶ 44} Although this court's review of the trial court's granting of JNOV is de novo, our review of its granting of a new trial is limited to determining whether the trial court abused its discretion. "It is well-settled law that the decision on a motion for a new trial pursuant to Civ.R. 59 is within the discretion of the trial court. The trial court's decision will be disturbed only upon a showing that such decision was unreasonable, unconscionable or arbitrary." *Sharp v. Norfolk & W. Ry. Co.* (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219. Further-

more, in *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242, the Supreme Court stated:

> [T]he abuse of discretion standard requires a reviewing court to "view the evidence favorably to the trial court's action rather than to the original jury's verdict." * * * This deference to a trial court's grant of a new trial stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the "surrounding circumstances and atmosphere of the trial."

Id. at 448, 659 N.E.2d 1242, quoting *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 94, 52 O.O.2d 376, 262 N.E.2d 685.

{¶ 45} Although it is not entirely clear upon what grounds the trial court granted the new trial, the trial court, in its May 20, 2003 decision, set forth one of the bases for granting a new trial pursuant to Civ.R. 59(A). Citing Civ.R. 59(A)(6) and *Rohde*, 23 Ohio St.2d at 93, 52 O.O.2d 376, 262 N.E.2d 685, the trial court noted that it had the authority to grant a new trial if it concluded that the verdict was contrary to the weight of the evidence. Civ.R. 59(A) provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
>
> * * *
>
> (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case[.]

Additionally, defendant Abbott's June 7, 2002 motion argued that a new trial should be granted on the grounds that the judgment was not sustained by the weight of the evidence, pursuant to Civ.R. 59(A)(6). Based on this court's review of the record, we conclude that the trial court conditionally granted a new trial as to plaintiff's age-discrimination claim on the basis that the verdict was not supported by the weight of the evidence. Essentially, the trial court found that the evidence at trial was not legally sufficient to support plaintiff's age-discrimination claim and that even if it was legally sufficient to support the claim, it was not supported by the weight of the evidence.

{¶ 46} The Supreme Court of Ohio, in *Antal v. Olde Worlde Products, Inc.* (1984), 9 Ohio St.3d 144, 9 OBR 392, 459 N.E.2d 223, at the syllabus, stated as follows:

> When granting a motion for a new trial based on the contention that the verdict is not sustained by the weight of the evidence, the trial court must articulate the reasons for so doing in order to allow a reviewing court to determine whether the trial court abused its discretion in ordering a new trial.

However, in this appeal, plaintiff has not argued that the trial court failed to articulate the reasons for granting the motion for a new trial.

{¶ 47} At trial, evidence was presented that indicated the existence of an in-region reassignment policy, which explained the disparate treatment in this case. Specifically, there was testimony that the preference was to reassign employees within the same region and district, for a variety of reasons. Additionally, testimony indicated that the Gary position was the only position available within plaintiff's region, and therefore plaintiff's reassignment was consistent with this policy. As revealed in the interrogatories, the jury found that defendants demonstrated that plaintiff was transferred to Lake County, Indiana, for reasons other than his age. However, the jury determined that plaintiff demonstrated that the reasons were false, and that plaintiff proved by a preponderance of the evidence that defendants intentionally discriminated against him because of his age based on his transfer to Lake County, Indiana.

{¶ 48} As determined above, the evidence at trial was legally sufficient to support an age-discrimination claim. However, after thoroughly reviewing the extensive record in this case, and considering the sound discretion provided to the trial court in determining whether to grant a motion for a new trial, we conclude that the trial court did not abuse its discretion in conditionally granting a new trial on plaintiff's age-discrimination claim.

{¶ 49} Considering the foregoing, we sustain plaintiff's first and second assignments of error on the basis that the trial court erred in granting the motion for JNOV. We need not, and do not, reach the issue that is raised by plaintiff's first assignment of error of whether the trial court erred in granting the JNOV based upon the law-of-the-case doctrine. However, the trial court did not abuse its discretion in conditionally granting a new trial as to plaintiff's age-discrimination claim. Therefore, to the extent that defendant argues under his second assignment of error that the trial court erred in conditionally granting a new trial on the issue of age discrimination, it is overruled.

{¶ 50} By his third assignment of error, plaintiff asserts that the trial court erred in granting defendants' motion for remittitur. Plaintiff's seventh assignment of error alleges that the trial court erred in denying his motion for attorney fees. In his eighth assignment of error, plaintiff alleges that the trial court erred in denying his motion for prejudgment interest. Defendants, in their first cross-assignment of error, assert that the trial court erred in not granting a new trial on the ground that the jury's verdict was influenced by passion or prejudice. In their second cross-assignment of error, defendants argue that the remitted punitive-damages award of $4,000,000 remains unconstitutionally excessive. In their third cross-assignment of error, defendants contend that the remitted compensatory-damages award of $100,000 is grossly excessive. Having deter-

mined that the trial court did not abuse its discretion in conditionally granting a new trial as to plaintiff's age-discrimination claim, we find that these assignments of error are moot.

{¶ 51} Plaintiff's fourth, fifth, and sixth assignments of error relate to the trial court's exclusion of certain evidence at trial. Regarding these assignments of error, we preliminarily note that "[a] trial court has broad discretion in the admission and exclusion of evidence. Unless the trial court has clearly abused its discretion, an appellate court should not interfere in its determination." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394; see, also, *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 52} Under his fourth assignment of error, plaintiff contends that the trial court erred in excluding certain evidence relating to his claim of constructive discharge. Specifically, plaintiff argues that the trial court erroneously excluded from evidence a 1998 newspaper article that declared Gary to be the most dangerous city in the United States for crime. Plaintiff also argues that the trial court erred in not permitting plaintiff's counsel to question witnesses regarding the desirability of working in Gary and by excluding from evidence photographs that plaintiff took of Gary.

{¶ 53} "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy*, 75 Ohio St.3d 578, 664 N.E.2d 1272, at paragraph four of the syllabus. Regarding the evidence necessary to prove constructive discharge, the Supreme Court of Ohio stated:

> [T]here is no sound reason to compel an employee to struggle with the inevitable simply to attain the "discharge" label. No single factor is determinative. Instead, a myriad of factors are considered, including reductions in sales territory, poor performance evaluations, criticism in front of co-employees, inquiries about retirement intentions, and expressions of a preference for employees outside the protected group. Nor does the inquiry change solely because an option to transfer is thrown into the mix, lateral though it may be. A transfer accompanied by measurable compensation at a comparable level does not necessarily preclude a finding of constructive discharge. Our review is not so narrowly circumscribed by the quality and attributes of the transfer option itself.

{¶ 54} In this case, the jury held that plaintiff failed to prove that his transfer to Lake County, Indiana, resulted in working conditions that were so intolerable that a reasonable person would have been compelled to resign from his employment with Abbott. Thus, the jury found that plaintiff had failed to prove that he had been constructively discharged.

{¶ 55} Plaintiff argues that the newspaper article was not being offered for the truth of the matter asserted, i.e. that Gary was the most dangerous city in the United States for crime in 1998. Plaintiff argues that he was "offering the article as further evidence that he was 'transferred' to a place he believed to be a very undesirable place to live or work and was, in fact, constructively discharged." Plaintiff adds, "The article was simply a piece of information plaintiff relied upon in consideration of his constructive discharge." To the extent the article was offered to prove the truth of the matter asserted, it was inadmissible hearsay. Moreover, to the extent the article was being offered for the reasons stated by plaintiff, it was arguably irrelevant with respect to his constructive-discharge claim, as it went to plaintiff's subjective opinion regarding Gary. Plaintiff's subjective belief regarding Gary was not relevant to the issue of whether he was constructively discharged. See *Cline v. Electronic Data Systems Corp.* (Sept. 18, 2000), Washington App. No. 99CA14, 2000 WL 1573087 (an objective standard is applied in the constructive-discharge inquiry).

{¶ 56} Plaintiff argues that the trial court erred in not permitting plaintiff's counsel to question witnesses regarding the desirability of working in Gary. The trial court sustained objections to this testimony on the basis that the opinions of the witnesses regarding Gary were not relevant to the inquiry in this case. The trial court did not abuse its discretion in this regard, and we therefore find plaintiff's argument on this matter to be without merit.

{¶ 57} Plaintiff also asserts that the trial court erred in excluding photographs that plaintiff had taken of Gary. In his merit brief, plaintiff does not assert why it was error for the trial court not to allow the admission of the photographs. In his reply brief, plaintiff contends that the photographs were relevant to the inquiry as to what a reasonable person would have felt under the circumstances. Plaintiff's argument to the contrary notwithstanding, the trial court did not abuse its discretion in excluding from evidence the photographs that plaintiff took of Gary.

{¶ 58} Based on the foregoing, we overrule plaintiff's fourth assignment of error.

{¶ 59} In his fifth assignment of error, plaintiff argues that the trial court erred in excluding certain evidence on the basis of hearsay. Plaintiff asserts that it was error for the trial court to preclude testimony of Pini

regarding an alleged Abbott memorandum indicating that employees over 50 years old with 20 years of service should be encouraged to take early retirement. The trial court determined that the testimony of Pini regarding the alleged memorandum was inadmissible under Evid.R. 602. We conclude that the trial court did not abuse its discretion in excluding this testimony, and we therefore overrule plaintiff's fifth assignment of error.

{¶ 60} Plaintiff alleges in his sixth assignment of error that the trial court erred in excluding evidence of a prior verdict against two of the named defendants for age discrimination. In his brief, plaintiff asserts that the trial court erroneously did not permit the discussion of the *"Fitch"* case at trial. Plaintiff argues that evidence of a prior verdict against two of the defendants was admissible under Evid.R. 404(B), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 61} Although it is not entirely clear from the record, plaintiff apparently is referring to the Franklin County Court of Common Pleas case of *Fitch v. Abbott Laboratories,* case No. 94CVH08–5867. The record before this court contains a copy of an agreed order in *Fitch.* The order, which was signed by the trial court judge and dated November 3, 1997, vacated an earlier judgment entry and states that "all claims that were or could have been asserted by [Fitch] herein are hereby dismissed *with prejudice."* (Emphasis sic.)

{¶ 62} Notwithstanding plaintiff's arguments to the contrary, the trial court did not abuse its discretion in excluding evidence regarding the prior case. Thus, plaintiff's sixth assignment of error is overruled.

{¶ 63} For the foregoing reasons, plaintiff's first and second assignments of error are sustained on the basis that the trial court erred in granting defendants' motion for JNOV as to plaintiff's age-discrimination claim, but his second assignment of error is overruled to the extent that plaintiff argues that the trial court erred in conditionally granting defendants' motion for a new trial on the issue of plaintiff's age-discrimination claim. Our determination that the trial court did not abuse its discretion in conditionally granting defendants' motion for a new trial as to plaintiff's age-discrimination claim moots defendants' first, second, and third cross-assignments of error, as well as plaintiff's third, seventh, and eighth assignments of error. Plaintiff's fourth, fifth, and sixth assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that

court for further proceedings in accordance with law and consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FRENCH, J., concurs.

McCORMAC, J., dissents.

McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

McCORMAC, Judge, dissenting.

{¶ 64} I agree with the majority that the trial court erred in granting judgment notwithstanding the verdict on plaintiff's claim of age discrimination. I respectfully disagree with the majority's ruling that the trial court did not abuse its discretion in granting a conditional new trial.

{¶ 65} My analysis of the evidence leads me to the conclusion that the jury correctly found that the defendant's reason for the adverse employment action was a pretext for unlawful discrimination. The jury's finding was not against the manifest weight of the evidence, but fully in accordance with it. Defendant's reason is not well supported by the record, in contrast to plaintiff's evidentiary history of excellent service to defendant and remarks by defendant's personnel that strongly indicated that he was assigned to a poor territory and inferior position because of his age and for no other legitimate reason.

{¶ 66} My conclusion is fortified by the fact that the trial court failed to articulate reasons for its ruling to enable us to determine whether the trial court abused its discretion in ordering a new trial. See *Antal v. Olde Worlde Products, Inc.* (1984), 9 Ohio St.3d 144, 9 OBR 392, 459 N.E.2d 223,

{¶ 67} Demonstrative of the inability of our court to fully review the trial court's conditional order is the majority's analysis, which primarily consists of the statement that "after thoroughly reviewing the extensive record in this case, and considering the sound discretion provided to the trial court in determining whether to grant a motion for a new trial, we conclude that the trial court did not abuse its discretion in conditionally granting a new trial on plaintiff's age-discrimination claim." ¶ 48. That analysis stands, through no fault of the majority, in stark contrast to the otherwise excellent analysis.

{¶ 68} The assignments of error regarding the remittitur should not be determined to be moot.