[Cite as *One Step Further Physical Therapy, Inc. v. CTW Dev. Corp.*, 2012-Ohio-6137.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

ONE STEP FURTHER PHYSICAL )
THERAPY, INC., ) CASE NO. 11 MA 66
)
    PLAINTIFF-APPELLANT, )
)
    - VS - ) OPINION
)
CTW DEVELOPMENT CORP., )
)
    DEFENDANT-APPELLEE. )


CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas
Court, Case No. 01 CV 1857.


JUDGMENT:    Affirmed.


APPEARANCES:
For Plaintiff-Appellant:    Attorney Robert Vizmeg
Anzellotti, Sperling, Pazol & Small
21 North Wickliffe Circle
Youngstown, OH 44515


For Defendant-Appellee:    Attorney William Jack Meola
Davis & Young
972 Youngstown-Kingsville Rd.
Vienna, OH 44473


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


Dated: December 17, 2012

DeGenaro, J.

{¶1} Plaintiff-Appellant, One Step Further Physical Therapy, Inc., appeals the decision of the Mahoning County Court of Common Pleas denying its motion for judgment notwithstanding the verdict following a jury verdict in favor of Defendant-Appellee, CTW Development Corp, in a negligence action. On appeal, One Step argues that the trial court erred in denying its motion for JNOV because there was no competent, credible evidence presented to allow the jury to find that CTW's negligence was not the proximate cause of One Step's damages.

{¶2} Upon review, One Step's argument is meritless. The record contains substantial evidence upon which reasonable minds could reach different conclusions on the issue of proximate cause; thus, the trial court did not err in denying One Step's motion for JNOV. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} This case arose from a fire in January 2001 that destroyed an office building at 3660 Stutz Drive, Canfield Ohio. CTW constructed the Stutz Drive building in 1996 and at the time of the fire in 2001, CTW was leasing a portion of the building to One Step. Other parties and claims were initially involved in this litigation; however, at issue in this appeal is a negligence claim One Step brought against CTW. One Step claimed that CTW negligently constructed the Stutz Drive building and failed to adhere to applicable building codes. One Step alleged that as a direct and proximate result of this negligence, the January 2001 fire was unable to be extinguished in order to prevent damage to One Step's business and property.

{¶4} The case proceeded to a jury trial before the magistrate on December 13, 2010. During trial, the parties presented evidence regarding the construction of the Stutz Drive building and provisions in the Ohio Basic Building Code for fire-resistance construction methods. One Step presented testimony to show that the Stutz Drive building exceeded two stories and 30 feet in height; thus, the building code required that it be constructed as a Type 5A protected building. The building code required that a Type 5A protected building contain a one-hour fire-resistance rating for the floor/ceiling assembly. The Stutz Drive building was built in 1996 as a Type 5B unprotected building

without the one-hour fire-resistance floor/ceiling assembly.

{¶5} Chief Robert Tieche of the Cardinal Joint Fire District testified first for One Step. Based on the response log created by the dispatch center, the Chief testified that on January 11, 2001, the dispatch center received the fire alarm for the Stutz Drive building at 3:12 a.m., and he arrived on the scene at 3:19 a.m. Chief Tieche explained that when he arrived on the scene, there was heavy fire coming out of two windows on the lower level. Firefighters entered the building at 3:28 a.m. to start an offensive attack on the fire, wherein the firefighters enter a building to locate the source of the fire so that they can suppress the fire faster. Chief Tieche explained that at that point, the fire was contained to an attorneys' office on the lower level of the building where the fire started. He estimated that between 8 to 12 minutes after the firefighters entered the building, the ceiling collapsed in the attorneys' office. At that point, all the firefighters evacuated the building and they began fighting the fire defensively by spraying water into the building from the outside.

{¶6} Chief Tieche testified that because this was an arson fire, it "had a big head start." He explained that regardless of whether a fire is arson, if the firefighters can enter a building to fight the fire offensively, they will. When a fire is contained within a compartment before it extends into other compartments or into the structure of the building, more likely than not, the building can be saved by fighting the fire offensively. However, he testified that once the ceiling collapsed in the Stutz Drive building, it was more likely than not that there would be extensive damage to the building. When asked to assume that he had an extra 30 minutes to fight the fire, the Chief stated: "If we had an extra 30 minutes in that compartment before the compartment failed, it would probably have allowed us to suppress the majority of the fire." He confirmed that this would have allowed the firefighters to "save the building."

{¶7} On cross, Chief Tieche confirmed that the attorneys' office on the lower level where the fire originated contained a large amount of paper, which is an accelerant for fire, and the fire inspector determined that the fire was started with gasoline in at least two spots. He agreed that under these circumstances, a fire would burn "pretty quickly"

and that it would be more intense than if the carpet was lit on fire without an accelerant. Finally, he confirmed that during his deposition, he said that the fire "burned like hell."

{¶8}    Next, Gordon Zeiler, general manager of Vector Security, testified.  Vector Security had installed a fire alarm system in the attorneys' office at Stutz Drive.  This alarm system used both a motion and heat detector and both detectors needed to be activated before the alarm would engage.  The heat detectors would activate either if the air in the room reached a certain temperature or if the temperature of the room increased a certain amount within seconds.  The attorneys' office also contained smoke heat detectors which would engage due to the smoke concentration in the room.

{¶9}    Based on a list of the times that the alarms activated, Zeiler testified that the fire alarm first activated at 3:09 a.m. and the operator dispatched the fire department at 3:10 a.m.  He did not know the order in which the detectors activated, only that the fire alarm engaged.  However, the heat detector closest to the windows where the firefighters saw the fire was a heat detector that activated by 135°F temperatures or the rate of rise of the temperature.  This detector was located approximately 12 feet from the windows.  He also testified that the alarm system divided the attorneys' office into eight zones and by 3:13 a.m., detectors had activated in five of those zones, likely due to fire.  On cross, Zeiler confirmed that the list of the alarms does not indicate when the fire started.

{¶10} Next, Robert Sharp testified that he is an Assistant Chief with the investigations unit of the State Fire Marshal's Office and he had previous experience working as an arson investigator for the Youngstown Fire Department.  Sharp investigated the fire at the Stutz Drive building and determined that it was started by gasoline. He explained that gasoline is an accelerant for fire.  When gasoline is poured, it creates a vapor that ignites instantly when a flame is applied.  The size of the room, the amount of ignitable liquid used, and the time it takes to pour the liquid affects the amount of vapor produced.  The more vapor produced, the larger the "plume" of fire that will be created when the vapor ignites.  Sharp explained that when gasoline is poured on carpet, the carpet itself will burn and create heat, as well as release gases which will rise into the ceiling. The combustibles nearby, the "fuel load," will also ignite and burn.  Sharp agreed

that paper is a good fuel load and is easier to light than material with a greater density. However, he explained that it depends on how long the heat source stays on the combustible before it burns.

**{¶11}** Sharp agreed that the ignited vapor cloud would be like a fireball. The fireball would be a minimum of 800°F, but could be as hot as 1,700°F, depending on the amount of vapor created by the amount of gasoline used. He further explained that a fireball that hot would heat the ambient air in the room immediately. Counsel then asked if Sharp could give an opinion as to whether the fireball would heat the air 10 or 15 feet away from it to 135°F. Sharp estimated that if the room was already 60° or 70°F and even if only a quarter of a gallon of gasoline was used, upon ignition, the temperature in the room could rise to 135° F.

**{¶12}** On cross, Sharp stated that he could not estimate the size of the fireball, but based on his experience, he thought it was substantial. Regarding the spread of the fire, Sharp explained that the fireball would return to the carpet and burn, but he did not know what was around the fireball that would ignite. Counsel noted Chief Tieche's testimony that the room was full of paper, and Sharp agreed that the paper would make a difference in the fire. He also testified that he could not estimate the time it would take for the temperature to rise in the room because he did not know what was actually burning in the room.

**{¶13}** Next, Jeffrey Grusenmeyer testified that he is a licensed architect in Ohio, and he is also certified as an Ohio master plans examiner, which involves reviewing plans submitted to the State for compliance with the building code. He explained that he has seen videos showing testing on one-hour floor/ceiling assemblies. In the test, thermocouples and cotton are attached to the top of the assembly and a series of gas-fired jets are applied to the underside. If the thermocouples exceed a given temperature or if the cotton spontaneously combusts before an hour has elapsed, then the system fails. Based on his experience with these assemblies in actual fires, Grusenmeyer stated that the one-hour rating is a minimum and the assemblies will generally exceed the one-hour requirement. He explained that the purpose of the fire-resistance requirements in

the building code is to protect lives by allowing people to exit the building and firefighters to fight the fire. On cross, Grusenmeyer testified that he did not know the exact temperature of the gas flame used during the tests, but he believed that it would exceed 1,000ºF. He agreed that it was likely that the assembly would burn slower if the flames were 800ºF than if the flames were 1700ºF.

{¶14} One Step then rested subject to the admission of its exhibits. CTW moved for a directed verdict, which the magistrate denied.

{¶15} CTW then called Stephen Berry as its first witness. He is a licensed architect in Ohio, and he was the Chief Building Official for Mahoning County from 1993 to 1998. He also designed the Stutz Drive building for CTW. On cross, Berry agreed that the purpose of the fire-resistance requirements in the building code is to keep people and property safe from destruction by fire; however, he stated that this did not include fires started by gasoline. He further explained: "In this case I would say it made no difference whether there was a fire rating on that truss or not. I would say this is an arson fire started by gasoline. It would make no difference." However, Berry admitted that he did not know the amount of gasoline used to start the fire.

{¶16} Next, Richard Kraly, a licensed architect in Ohio, testified for CTW. He did not believe that the one-hour fire-resistance provisions in the building code take arson into account. He explained that he has investigated approximately six or less arson fires. He agreed that an arson fire burns hotter than a regular fire because of the accelerant. However, he later admitted that this opinion was based on what he had heard from other fire investigators, not his personal experience.

{¶17} On cross, Kraly testified that the purpose of the fire-resistance ratings in the building code is to allow people to exit a building safely during a fire. He agreed that in general, regardless of how a fire starts, construction that is protected will last longer than unprotected. When asked if the fire-resistance provisions retard the rate of the spread of the fire regardless of whether it begins accidentally or by arson, Kraly replied: "It should, but I think arson takes that out of the equation." He explained that the rate of the spread depends on what accelerant is used.

**{¶18}** CTW rested subject to admission of its exhibits. One Step moved for a directed verdict with regard to liability, which the magistrate overruled. CTW then renewed its motion for directed verdict, which the magistrate also overruled.

**{¶19}** Following deliberations, the jury returned five interrogatories. In interrogatories one, two and three, the jury unanimously found that One Step had proven more likely than not that: 1) the 1996 building code required the Stutz Drive building to be Type 5A protected; 2) the Stutz Drive building failed to comply with the building code; and 3) CTW was negligent in the construction of the Stutz Drive building.

**{¶20}** Interrogatory four asked if One Step had proven more likely than not that it incurred damages as a proximate result of CTW's negligence in constructing the Stutz Drive building. The jury unanimously answered "no" to this interrogatory. The jury did not answer interrogatory five based on its answer to the fourth interrogatory. The jury also returned a general verdict finding in favor of CTW and against One Step.

**{¶21}** On December 22, 2010, the magistrate issued a decision ordering that judgment be entered in favor of CTW and against One Step.

**{¶22}** On January 4, 2011, One Step filed objections to the magistrate's decision, and a motion for JNOV or alternatively for a new trial on the issue of damages. One Step argued that there was competent, credible evidence presented at trial to allow the jury to find that CTW's negligence was the proximate cause of One Step's damages, and it lost its way by failing to so find. One Step alleged that it presented evidence during trial that but for CTW's failure to comply with the building code, One Step would not have lost its business to fire. One Step claimed that the only evidence presented at trial on proximate cause was Chief Tieche's testimony that the firefighters would have been able to suppress the fire if they had an extra 30 minutes to fight it. CTW filed a memorandum in opposition on January 21, 2011.

**{¶23}** On March 31, 2011, the magistrate issued a decision overruling One Step's motion for JNOV and for a new trial. The magistrate found that Chief Tieche's testimony on saving the building with an extra 30 minutes to fight the fire was not dispositive of proximate cause. The magistrate stated that it was possible the jury concluded that this

belief was "mere speculation" and noted that the Chief did not explain this belief in detail.

**{¶24}** The magistrate also found that the jury may have concluded that the one-hour fire-resistance floor/ceiling assembly would not have allowed the firefighters an additional 30 minutes before the ceiling collapsed in an arson fire. The magistrate noted Zeiler's testimony suggesting that the fire spread quickly through the attorneys' office. Sharp also testified that the fire began as a gasoline fire that initially burned between 800° and 1700°F. Further, no witnesses testified regarding the temperature of the gas used during the testing of the one-hour fire-resistance assemblies. The magistrate concluded that the jury likely believed that One Step failed to demonstrate by the greater weight of the evidence that a Type 5A building could have been saved despite the arson fire because there was no expert testimony on the effect of an arson fire on a one-hour fire-resistance assembly.

**{¶25}** On April 5, 2011, the trial court issued a judgment entry overruling One Step's objections and adopting the December 22, 2010 magistrate's decision. On that same date, the court also issued a judgment entry overruling One Step's motion for JNOV and for a new trial.

**{¶26}** On April 13, 2011, One Step filed objections to the March 31, 2011 magistrate's decision and requested to supplement its objections with applicable portions of the trial transcript. One Step subsequently filed the trial transcript on April 20, 2011. On that same date, One Step also filed a supplemental memorandum in support of its objections and motion for JNOV and for a new trial.

**{¶27}** One Step filed a timely notice of appeal from the trial court's April 5, 2011 judgment entry with this court on May 4, 2011. This notice of appeal stated that One Step was appealing from an order granting a motion to compel.

**{¶28}** On May 20, 2011, One Step filed a motion for leave to file an amended notice of appeal. It explained that in its original notice of appeal it incorrectly described the order appealed from and that the correct order it was appealing from was the April 5, 2011 judgment entry denying its motion for JNOV and for new trial.

**{¶29}** On May 22, 2012, this court issued a judgment entry remanding the case to

the trial court for the limited purpose of issuing a ruling on One Step's April 13, 2011 objections to the March 31, 2011 magistrate's decision pursuant to Civ.R. 53(D)(4)(e)(i). On July 17, 2012, the trial court issued a judgment entry overruling One Step's objections and ordering judgment for CTW.

## Motion for Judgment Notwithstanding the Verdict

**{¶30}** In its sole assignment of error, One Step asserts:

**{¶31}** "The Trial Court erred in denying Plaintiff's Motion for Judgment Notwithstanding the Verdict as no competent, admissible evidence was presented to permit the conclusion that failure to use the required fire resistant materials did not proximately cause Plaintiff's injuries."

**{¶32}** As an initial matter, the parties disagree regarding the standard of review. One Step contends that this court should apply a de novo standard to evaluate the trial court's denial of its motion for JNOV. CTW argues that an abuse of discretion standard is appropriate because One Step has appealed from the trial court's judgment entry which adopted the December 22, 2010 magistrate's decision. CTW contends that because One Step did not argue in its brief that the trial court abused its discretion in adopting the magistrate's decision and failed to file a trial transcript in support of its objections prior to the trial court's April 5, 2011 judgment entry, this court should affirm the trial court's judgment.

**{¶33}** In response, One Step asserts that its January 4, 2011 objections/motion for JNOV and for a new trial was only a motion for JNOV and for a new trial, despite the title of this pleading. The magistrate denied this motion, and One Step objected to that decision. The trial court issued its judgment entry on April 5, 2011, and One Step asserts that it subsequently timely filed the trial transcript on April 20, 2011. It notes that the trial court never issued a subsequent judgment entry considering the trial transcript and performing an independent review of the objections.

**{¶34}** However, following this court's remand of the case to the trial court to rule on One Step's April 13, 2011 objections, the trial court has now overruled these objections. One Step is correct that we should review the trial court's denial of its motion

for JNOV under a de novo standard of review. Although One Step did not correctly specify which April 5, 2011 judgment entry it was appealing from in its original notice of appeal, it is clear from its motion to amend the notice of appeal and from the assignment of error in its brief that it is appealing from the trial court's denial of its motion for JNOV.

{¶35} Motions for JNOV employ the same standard as motions for directed verdict. *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976). A trial court must grant a motion for directed verdict or JNOV if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). When making this decision, the court does not weigh the evidence or evaluate the credibility of the witnesses. *Malone v. Courtyard by Marriott*, 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996). "Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" *Id.* This court reviews the trial court's decision de novo. *Jelinek v. Abbott Laboratories*, 164 Ohio App.3d 607, 2005-Ohio-5696, 843 N.E.2d 807, ¶ 35 (10th Dist.).

{¶36} One Step's claim against CTW is for negligence. To sustain a claim of negligence, a plaintiff must show a duty owed by defendant to a plaintiff, a breach of that duty, injury or damages, and the existence of proximate cause between the breach and the injury or damages. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). At issue here is whether CTW's negligence proximately caused One Step's damages. "'Proximate cause' has been defined as a happening or event that as a natural or continuing sequence, produces an injury without which the injury would not have occurred." *McDougall v. Smith*, 191 Ohio App.3d 101, 2010-Ohio-6069, 944 N.E.2d 1218, ¶ 5 (3d Dist.), quoting *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

{¶37} One Step argues that CTW presented no evidence which proved by a preponderance of the evidence that the one-hour fire-resistance rating could not

withstand this fire. It points to Chief Tieche's testimony that the firefighters could have suppressed the fire if they had an additional 30 minutes to fight the fire. One Step also notes that the building code does not distinguish in its construction requirements based on how a fire begins. However, One Step has framed its argument such that it has misapplied the burden of proof. Despite One Step's claim that CTW did not present sufficient evidence on the issue of proximate cause, as the plaintiff bringing the negligence claim, One Step had the burden of proof to establish proximate cause, not CTW. *Menifee* at 77. Thus, we must review the issue of proximate cause from the proper perspective: did One Step prove by a preponderance of the evidence that the one-hour fire-resistance rating would have withstood this arson fire?

{¶38} Based on the testimony of Chief Tieche and Zeiler, this fire burned for approximately 30 minutes before the ceiling in the attorneys' office collapsed. CTW contends that no witness could testify to when the fire started or how long it burned before the alarms engaged. However, Sharp testified that the fireball created in an arson fire would heat the ambient air in the room immediately and could cause the temperature in the room to rise to 135°F, the temperature at which the heat detector would engage. Thus, there was substantial evidence presented such that the jury could conclude that the ceiling collapsed less than one hour after the fire began.

{¶39} One Step claims that Chief Tieche's testimony is unrefuted evidence regarding proximate cause. But as the trial court noted, the jury likely concluded that even with the one-hour fire-resistance assembly, the ceiling still would have collapsed in less than an hour due to the nature of the arson fire. Several witnesses testified that an arson fire is more intense, hotter, or burns faster than a fire started without an accelerant. For example, Chief Tieche testified that a fire started by gasoline would burn quickly and be more intense than a regular fire. Sharp also testified that gasoline is an accelerant that causes a fire to burn faster, and he testified that the fireball created by the gasoline would be very hot, between 800° and 1,700°F. One Step further claims that the evidence only showed the effect of gasoline in starting a fire and that the fireball created by the gasoline would subside quickly and the room would burn the same as if no accelerant

was used. However, Chief Tieche testified that the attorneys' office was full of paper, and Sharp confirmed that the way an arson fire would burn and spread depends upon the combustibles nearby. He further testified that paper is a good fuel load for a fire and that a room full of paper would make a difference in how the fire burned.

{¶40} Finally, One Step argues that the building code does not distinguish between types of fires and no evidence was presented that the one-hour fire-resistance assembly would not provide an hour of protection against the fire. However, Berry testified that because this fire was arson, it would not make a difference whether the ceiling contained a fire-resistance assembly. Further, Kraly also testified that the one-hour fire-resistance ratings in the building code do not account for arson. While Grusenmeyer did testify regarding the testing performed on the one-hour fire-resistance assemblies, he believed that the temperature of the gas flame used during the tests would exceed 1,000°F but did not know the exact temperature used in the testing. He agreed that an assembly would likely burn slower if the flames were 800° as opposed to 1700°F.

{¶41} Thus, construing this evidence most strongly in favor of CTW, there is substantial competent evidence upon which reasonable minds could come to different conclusions on the issue of proximate cause. Accordingly, the trial court did not err in overruling One Step's motion for JNOV.

{¶42} In sum, One Step's sole assignment of error is meritless. The record contains substantial evidence upon which reasonable minds could reach different conclusions on the issue of proximate cause; thus, the trial court did not err in denying One Step's motion for JNOV. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.
Vukovich, J., concurs.