OPINION
{¶ 1} Plaintiff-appellant, Robert F. Walter, filed a complaint against ADT Security Systems, Inc., Ted Guzek, Rex Gillette, and Big Lots Stores, Inc., alleging age discrimination, aiding and abetting of age discrimination, interference with contractual relations, intentional interference with employment relations, intentional interference with business relationships and civil conspiracy. The trial court granted summary judgment motions on all counts as to all defendants. *Page 2 
 {¶ 2} Appellant filed a notice of appeal, raising the following assignments of error:
 I. The trial court erred in granting defendants' motions for summary judgment on plaintiff's claim of age discrimination.
 II. The trial court erred in granting defendants' motions for summary judgment on plaintiff's claims for tortious interference with contract, tortious interference with a business relationship and intentional interference with an employment relationship.
 III. The trial court erred in granting defendants' motions for summary judgment on plaintiff's claim of civil conspiracy.
 IV. The trial court erred in failing to compel discovery.
 {¶ 3} ADT provides installation, monitoring and maintenance for security systems, including burglar and fire alarm, closed-circuit television and electronic article surveillance systems in residential, commercial and government settings. Appellant was employed by ADT since 1967 and worked as a National Account Manager for over 23 years. In 2001, appellant obtained Big Lots as a client, developed through his business relationship with Kevin Wolfe, the Vice-President of Loss Prevention for Big Lots.
 {¶ 4} The initial contract involved the transition of over 1,100 stores. All parties agree that ADT was unable to provide complete and prompt service to Big Lots. Appellant contends that he did not have authority to control service and operations but alerted his supervisor of customer concerns and complaints regarding continuing service and installation issues. (Walter aff. at ¶ 13.) Wolfe stated that from the beginning, Big Lots had problems with support and follow through with the account and he complained to appellant, and when appellant did not address his complaints, he *Page 3 
complained to appellant's supervisor. (Wolfe aff. at ¶ 7.) Big Lots continued to have issues with appellant's responsiveness. (Wolfe aff. at ¶ 8.)
 {¶ 5} After experiencing problems with the account, Wolfe requested a meeting with appellant's supervisor, Ted Guzek, and Guzek's supervisor, Rex Gillette, and did not want appellant to be present. Wolfe reiterated that Big Lots was unhappy with ADT's service and Wolfe asked Guzek and Gillette to raise the level of service that a multi-million dollar company, such as Big Lots, deserved. (Wolfe depo. at 42.) Wolfe asked, "Who's ultimately responsible for making sure that the — our stores are opened on a timely basis and creating us a single point of contact." (Wolfe depo. at 45-46.) The answer was appellant. He was told that ADT needed to make a change on the account. (Wolfe depo. at 45.)
 {¶ 6} Guzek testified he telephoned Wolfe on June 14 or 15, 2004, to discuss appellant's removal from the account. (Guzek depo. at 98.) Guzek explained the reasons he was removing appellant, and Wolfe did not want to be the only reason appellant was being removed. (Guzek depo. at 99.) Guzek asked Wolfe if he was comfortable with appellant being told that Big Lots asked for his removal, and Wolfe said he was. (Guzek depo. at 100-101.)
 {¶ 7} On June 16, 2004, Guzek informed appellant that he was being removed as National Account Manager for Big Lots. (Guzek depo. at 8.) Guzek told appellant there were four reasons for his removal, including: (1) lack of leadership, (2) lack of communication, (3) Big Lots wanted a quicker response, and (4) Big Lots wanted appellant removed. (Guzek depo. at 88.) Appellant responded that he may as well retire given that such a large portion of his income was being taken away. (Walter *Page 4 
depo. at 65.) Guzek called Human Resources to answer appellant's questions regarding appellant retiring on November 1. Lisa Timberman, who is younger than appellant, was assigned as the National Account Manager on the Big Lots account. Wolfe stated that there was an improvement since appellant had been removed because the majority of Big Lots stores had opened on time and only one of 100 stores in the past year had not opened on time. (Wolfe depo. at 37-38.)
 {¶ 8} Appellant filed the complaint alleging that ADT, Guzek and Gillette discriminated against him on the basis of age, engaged in a civil conspiracy in violation of age discrimination laws, and the laws against intentional interference with contracts. The complaint alleges that Big Lots aided and abetted age discrimination against him, intentionally interfered with his contractual and employment relations and intentionally interfered with advantageous business relationships between appellant and ADT, and engaged in a civil conspiracy against him in violation of age discrimination laws and the laws against intentional interference with contracts.
 {¶ 9} By the first assignment of error, appellant contends that the trial court erred in granting appellees' motions for summary judgment on his claim of age discrimination. To prevail on a motion for summary judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the non-moving party, no genuine issue of material fact remains to be litigated and that it is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party.Williams v. First United Church of Christ (1974), *Page 5 37 Ohio St.2d 150, 151. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the non-moving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 10} When an appellate court reviews a trial court's disposition of a summary judgment motion, the appellate court applies the same standard as applied by the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107. An appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence in accordance with the standard set forth in Civ.R. 56, as well as the applicable law. Murphy, supra.
 {¶ 11} Initially, we note that appellant argues that the case ofReeves v. Sanderson Plumbing Prods., Inc. (2000), 530 U.S. 133,120 S.Ct. 2097, requires this court to ignore all of the evidence appellees presented in support of their motions for summary judgment and to believe all of appellant's evidence. In Reeves, the United States Supreme Court set forth the following, at 151:
 * * * [Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright Miller 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Page 6 
 {¶ 12} This court has previously rejected appellant's argument. SeeSweet v. Abbott Foods, Inc., Franklin App. No. 04AP-1145,2005-Ohio-6880. In Sweet, this court found that appellant's interpretation is so broad that it would lead to absurd consequences and stated when Sweet is read within the context of the authority cited,Reeves does not require the exclusion of all interested-party testimony. See Sweet, citing Almond v. ABB Indus. Sys., Inc. (C.A.6, 2003), 56 Fed.Appx. 672, 675.
 * * * Rather, pursuant to 9A Wright Miller, Federal Practice and Procedure (2 Ed. 1995) 287 fn. 9, Section 2527, " `[t]he testimony of an employee of the [movant] must be taken as true when it disclosed no lack of candor, the witness was not impeached, his credibility was not questioned, and the accuracy of his testimony was not controverted by evidence, although if it were inaccurate it readily could have been shown to be so.' "
Sweet, at ¶ 28.
 {¶ 13} R.C. 4112.02 provides, in pertinent part:
 It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
 {¶ 14} To prevail on an employment-discrimination claim, a plaintiff must prove discriminatory intent. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 583. In McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 93 S.Ct. 1817, the United States Supreme Court set forth the evidentiary guidelines regarding burdens of proof in discrimination cases. The Supreme Court of Ohio adopted that analytical framework and applied it to age discrimination claims in Barker v. Scovill, Inc.
(1983), *Page 7 6 Ohio St.3d 146. The McDonnell Douglas analysis involves "a three-step procedure that allocates the shifting burdens of production of evidence on the parties." Wang v. Goodyear Tire Rubber Co. (1990), 68 Ohio App.3d 13,16. Under this analysis, the employee must first "establish a prima facie case of age discrimination. Next, the burden of production shifts to the employer to state some legitimate non-discriminatory reasons for the employee's discharge. Finally, the burden shifts back to the employee to show that the employer's stated reasons were a pretext for age discrimination." Id., citing McDonnell Douglas and Barker, supra.
 {¶ 15} Appellant contends he presented a preponderance of the evidence demonstrating a prima facie case of discrimination using indirect evidence, thereby creating a rebuttable presumption that appellees unlawfully discriminated against him. To demonstrate a prima facie case using indirect evidence, a plaintiff must show that he "[was] a member of a statutorily protected class, he was subject to adverse action, he was qualified for the position, and he was replaced by a person of substantially younger age." Jelinek v. Abbott Laboratories,164 Ohio App.3d 607, 2005-Ohio-5696, at ¶ 39.
 {¶ 16} Appellant was born in 1937 and was 66 years old when the Big Lots account was taken from him. He had been working as a National Accounts Manager for 23 years. He suffered adverse employment action when the Big Lots account was reassigned to Lisa Timberman, who was 35 years old, because that account provided a significant portion of his income. Appellees contend that even if appellant established a prima facie case, they have provided a legitimate, nondiscriminatory reason for appellant's removal from the account. *Page 8 
 {¶ 17} Appellees demonstrated several nondiscriminatory reasons for removing appellant from the Big Lots account. First, appellant was perceived as ineffective in managing the account because of the ongoing problems. Second, the ADT defendants believed Big Lots wanted appellant removed from the account. It is undisputed that Big Lots experienced service problems from the beginning. Appellant admitted in his affidavit that ADT was unable to provide complete and prompt service on the Big Lots account and that he was aware that Big Lots was unsatisfied with ADT's service and failures. (Walter aff. at ¶ 13-14.) Appellant also admitted that he knew Wolfe was considering removing the Big Lots account from ADT because ADT was not fulfilling its commitment. (Walter depo. at 67.) Wolfe testified that Big Lots experienced problems with ADT's service from the beginning, although it was a problem which had peaks and valleys over the years. (Wolfe depo. at 42.) Wolfe also stated that appellant had problems with follow up or follow through on the account. (Wolfe depo. at 113.)
 {¶ 18} Appellant repeatedly contends that he did not have authority over the personnel involved with the service and installations. (Walter aff. at ¶ 3, 11, 13-15, 17-19, 23.) However, Guzek testified that appellant had authority to address the installation and billing issues. (Guzek depo. at 60.) Appellant had the ultimate responsibility on the account and admitted such. (Guzek depo. at 64; Walter depo. at 66.) Both Walter and Wolfe testified that Walter was able to rely on his relationships with employees to encourage prompt service and gets things accomplished. (Walter aff. at ¶ 14; Wolfe depo. at 91-92; 137.) However, it was the fact that things were not getting accomplished through appellant that prompted Wolfe to contact Guzek and set up the May 2004 meeting which led to appellant's removal. (Wolfe depo. at 97.) *Page 9 
 {¶ 19} The second nondiscriminatory reason appellees provided for removing appellant from the Big Lots account was that the ADT defendants believed Big Lots wanted appellant removed from the account. Guzek testified that Wolfe had telephoned him to set up the May 4, 2004 meeting to discuss personnel issues and did not want appellant present. (Guzek depo. at 76.) At the meeting, Wolfe told Guzek and Gillette that Big Lots had made personnel changes to their team and now it was ADT's turn to make a change. (Guzek depo. at 78.) Guzek stated:
 I asked Mr. Wolfe, "Do you mean you want Mr. Walter off the account or Mr. Dye?"
 He said, "No, not Mr. Dye." He said, "Who has the ultimate authority over my account?"
 And Rex Gillette said, "Mr. Walter does."
 And at that point in time, I think we realized that we needed to make a change on the account.
Id.
 {¶ 20} In response, Guzek and Gillette told Wolfe that they would make a change on the account, that they would change the National Account Manager on the account and Wolfe replied, "That's fine." (Guzek depo. at 81-82.) Guzek believes Wolfe asked for appellant to be removed from the account. (Guzek depo. at 97.)
 {¶ 21} Wolfe's testimony is substantially similar to Guzek's testimony. Wolfe stated that he requested that ADT raise the level of service. (Wolfe depo. at 42.) He was told that ADT was going to change the National Account Manager on the account because appellant was ultimately responsible for making sure that the services are delivered on a timely basis. (Wolfe depo. at 43.) Wolfe stated that he asked Guzek and *Page 10 
Gillette, "Who's ultimately responsible for making sure that the — our stores are opened on a timely basis and creating us a single point of contact." Gillette answered that it was appellant. (Wolfe depo. at 45-46; Wolfe aff. at ¶ 12.)
 {¶ 22} While Wolfe contends he did not request that appellant be removed from the account, he did ask for a change and did ask who was responsible for the account. He may not have specifically requested that appellant be removed, but the evidence demonstrates that he wanted changes and a commitment from ADT. He stated that he did not ask that appellant remain on the account, ask that appellant be put back on the account or suggest a different course of action. (Wolfe aff. at ¶ 19.) Thus, it is a reasonable inference that Wolfe wanted appellant removed, and appellees demonstrated legitimate, nondiscriminatory reasons for appellant's removal from the account.
 {¶ 23} Since appellees have demonstrated legitimate, nondiscriminatory reasons for appellant's removal from the account, appellant bears the burden of showing that the proffered reasons were a pretext for age discrimination. McDonnell Douglas, supra. In Texas Dept. of CommunityAffairs v. Burdine (1981), 450 U.S. 248, 255, fn 10, 101 S.Ct. 1089,1095, the United States Supreme Court determined the evidence that should be considered to decide whether the plaintiff has met the burden, as follows:
 * * * In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, *Page 11 
there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.
 {¶ 24} A plaintiff may meet her burden of rebutting a defendant's articulated reason by the use of indirect evidence by demonstrating "that the employer's proffered explanation is unworthy of credence." Id. at 256. Appellant contends that he demonstrated that appellees' reasons were not worthy of belief because Wolfe told him that he did not request that appellant be removed from the account. (Walter aff. at ¶ 28.)
 {¶ 25} Wolfe testified that he did not ask that appellant be removed from the account. However, Wolfe did ask for a change and did ask who was responsible for the account. He may not have specifically requested that appellant be removed, but the evidence demonstrates that he wanted changes and a commitment from ADT. He did not object when he was told that appellant would be removed from the account. He stated that he did not ask that appellant remain on the account, ask that appellant be put back on the account or suggest a different course of action. (Wolfe aff. at ¶ 19.)
 {¶ 26} Appellant also argues that appellees' timing is suspicious because appellant was removed from the account at approximately the same time Timberman was losing the Galyan's account due to an acquisition by Dick's Sporting Goods. However, Timberman testified that the loss did not occur until September or October 2004, which was months after appellant was removed from the account. (Timberman depo. at 36.) She was not aware that Dick's Sporting Goods purchased Galyan's until September 2004. (Timberman depo. at 37.) The mere fact that a younger employee replaced an older employee, standing alone, does not establish that the legitimate *Page 12 
nondiscriminatory reason was false or that the real reason for the action was discriminatory. Hoyt v. Nationwide Mut. Ins., Franklin App. No. 04AP-941, 2005-Ohio-6367, at ¶ 67.
 {¶ 27} Finally, appellant argues that ADT failed to transfer accounts from other National Accounts Managers to him after Big Lots was removed and that he was treated differently than other managers. Guzek testified that he chose Timberman because she was the only one who was both qualified and had the work capacity to manage the account. There was only one other National Account Manager who worked for him who was a possibility, but that manager did not have the capacity to absorb the account. (Guzek aff. at ¶ 24.) Other accounts had been transferred because of customer requests or workload issues. (Guzek aff. at ¶ 28; depo. at 49.) Guzek testified that while at ADT, he has transferred approximately the same number of accounts from younger to older employees as from older to younger employees. (Guzek aff. at ¶ 29.)
 {¶ 28} Even while construing the evidence in appellant's favor, the evidence presented does not permit a reasonable fact finder to disbelieve ADT's articulated legitimate nondiscriminatory reasons or believe that discrimination was the motivating factor behind ADT's actions. Thus, appellant has not demonstrated that appellees' legitimate, nondiscriminatory reasons were pretextual. No genuine issue of material fact remains to be litigated and the trial court did not err in granting appellees' motion for summary judgment on appellant's claim of age discrimination. Appellant's first assignment of error is not well-taken.
 {¶ 29} By the second assignment of error, appellant contends that the trial court erred in granting appellees' motions for summary judgment on appellant's claims for *Page 13 
tortious interference with contract, tortious interference with a business relationship and intentional interference with an employment relationship. Appellant argues that Big Lots tortiously interfered with appellant's employment with ADT.
 {¶ 30} "The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." Fred Siegel Co., L.P.A. v. Arter Hadden (1999),85 Ohio St.3d 171, paragraph one of the syllabus. In the second paragraph of the syllabus, the court continued, "Establishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper." If an employee is at-will, the tort of tortious interference with contract is not a viable cause of action. Mitchell v.Mid-Ohio Emergency Services, L.L.C., Franklin App. No. 03AP-981,2004-Ohio-5264, at ¶ 29. Thus, appellant cannot establish a cause of action of tortious interference with contract.
 {¶ 31} "The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom."Diamond Wine Spirits v. Dayton Heidelberg Distributing Co., Inc.,148 Ohio App.3d 596, 2002-Ohio-3932, at ¶ 23, citing Geo-Pro Serv. Inc. v.Solar Testing Laboratories, Inc. (2001), 145 Ohio App.3d 514, 525. The main difference between tortious interference with a contract and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract. Id. *Page 14 
 {¶ 32} The tort of tortious interference with an employment relationship occurs when one party to the relationship is induced to terminate the relationship by the malicious acts of a third person who is not a party to the relationship at issue. Condon v. Body Vickers Daniels (1994), 99 Ohio App.3d 12, 22.
 {¶ 33} "The basic principle of a `tortious interference' action is that one, who without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby." Wolf v. McCullough-Hyde Mem.Hosp. (1990), 67 Ohio App.3d 349, 355. "The doctrine of qualified privilege is applicable to tortious interference cases, and acts performed within a business relationship are considered subject to a qualified privilege." Chandler Assoc, Inc. v. America's HealthcareAlliance, Inc. (1997), 125 Ohio App.3d 572, 583. To overcome a qualified privilege, a party must show the wrongdoer acted with actual malice, which denotes an unjustified or improper interference with the business relationship. Id.
 {¶ 34} Appellant argues that Big Lots did not request a change from ADT but then agreed to be a pretext because Wolfe agreed to be one of the reasons that appellant was removed from the account even though he had told appellant that he had not requested appellant's removal.
 {¶ 35} In this case, Big Lots and ADT had a business relationship, and Big Lots was justified in requesting a change to receive better service from ADT and its actions were privileged. Appellant has not demonstrated any malice or reckless disregard on Wolfe's part. Finally, in his deposition, appellant admitted that he told Wolfe one of the main reasons to bring Big Lots into the lawsuit was to leverage ADT. (Walter depo. at *Page 15 
73.) Without a demonstration of malice, Big Lots is entitled to summary judgment and appellant's second assignment of error is not well-taken.
 {¶ 36} By the third assignment of error, appellant contends that the trial court erred in granting appellees' motions for summary judgment on his claim of civil conspiracy. The elements of a civil conspiracy are: (1) a malicious combination, (2) of two or more persons, (3) resulting in injury to person or property, and (4) the existence of an unlawful act independent of the actual conspiracy. Mitchell, supra, at ¶ 33, citing Davidson v. BP Am., Inc. (1997), 125 Ohio App.3d 643. A civil action for civil conspiracy requires a viable claim distinct from the conspiracy in order for the conspiracy claim to survive. Id. In this case, there are no surviving claims, thus, there can be no civil conspiracy. Appellant's third assignment of error is not well-taken.
 {¶ 37} By the fourth assignment of error, appellant contends that the trial court erred in failing to compel discovery. Appellant filed a motion to compel on October 12, 2005, alleging that appellees had failed to provide discovery. Appellant sought discovery regarding his peers in the National Accounts Retail Group, discovery of information regarding appellees' actions on the Big Lots account and discovery of other claims and allegations of discrimination. Appellant also sought e-mail, correspondence, complete calendars and commission statements from witnesses. Appellant filed a motion for reconsideration of the trial court's November 7, 2005 oral decision denying his motion to compel. This motion was denied as moot on January 3, 2006.
 {¶ 38} Appellees' motions for summary judgment were deemed filed on October 7, 2005, and were granted on January 6, 2006. Appellant filed a motion in *Page 16 
opposition on November 17, 2005, but makes no mention of requiring further discovery necessary to defend the motion for summary judgment.
 {¶ 39} A trial court has broad discretion in ruling on a motion to compel discovery and its decision will not be reversed absent an abuse of such discretion. 513 East Rich Street Co. v. McGreevy, Franklin App. No. 02AP-1207, 2003-Ohio-2487, at ¶ 10. In order to find that the trial court abused its discretion, we must find more than an error of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Most instances of an abuse of discretion result in decisions that are unreasonable as opposed to arbitrary and capricious. AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157. A decision that is unreasonable is one that has no sound reasoning process to support it.
 {¶ 40} Civ.R. 56(F) provides, as follows:
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
 {¶ 41} Appellant did not avail himself of the Civ.R. 56(F) procedure to enable more time before the trial court ruled on the summary judgment motions. See Benjamin v. Deffet Rentals (1981), 66 Ohio St.2d 86, 92. The discovery requests in this case were overly broad. Appellant requested that appellees identify employees who had accounts transferred or removed, their ages, supervisors, reasons and produce documents and personnel files. Appellees responded with the information regarding the *Page 17 
employees involved in this case and those who worked for Guzek. There was no pattern and practice of age discrimination alleged requiring company-wide discovery. We find no abuse of discretion by the trial court. Appellant's fourth assignment of error is not well-taken.
 {¶ 42} For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and BOWMAN, JJ., concur.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1