[Cite as *Parmater v. Internet Brands, Inc.*, 2015-Ohio-253.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Eric Parmater, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 14AP-391<br>(C.P.C. No. 13CV-1637) |
| Internet Brands, Inc. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 27, 2015

*Cooper & Elliott, LLC, Rex H. Elliott*, and *Charles H. Cooper, Jr.*, for appellant.

*Taft Stettinius & Hollister, LLP,* and *Justin D. Flamm*, for appellee, Internet Brands, Inc.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Eric Parmater, appeals from a judgment of the Franklin County Court of Common Pleas granting defendant-appellee, Internet Brands, Inc.'s ("Internet Brands"), motions for summary judgment and denying Parmater's motion to compel discovery.

## I. Facts and Procedural History

{¶ 2} In 2002, Parmater and David Hunegnaw co-founded GrooveJob.com, Inc. ("GJ Inc."), which owned and operated GrooveJob.com, a job-posting website for seasonal and part-time jobs. Hunegnaw owned 100 shares and Parmater owned 99 shares. After a business dispute, Hunegnaw, as the majority shareholder, removed Parmater from GJ Inc.'s board of directors, as well as from his position as vice president, in August 2002. In December 2002, the Ohio Secretary of State canceled GJ Inc. for its

failure to maintain a statutory agent as required under R.C. 1701.07. In February 2007, the secretary of state canceled GJ Inc.'s articles of incorporation for its failure to file required tax reports under R.C. 5733.20.

{¶ 3}  Hunegnaw formed a new company in 2004, GrooveJob, LLC ("GJ LLC")[1] GJ LLC continued to operate the GrooveJob.com website.

{¶ 4}  In October 2008, Hunegnaw and GJ LLC agreed to sell Internet Brands the website GroveJob.com and its related assets, including "trademarks, service marks, trade names, copyrights and * * * all other intellectual property and technology comprising the Website and its business."  (R. 69, exhibit C, 1.) As described in the asset purchase and sale agreement ("purchase agreement") Internet Brands paid GJ LLC and Hunegnaw $850,000.

{¶ 5}  Parmater initially sued both Hunegnaw and Internet Brands in May 2009, but voluntarily dismissed the complaint without prejudice.  Parmater then refiled his claims in February 2013 against Internet Brands, Hunegnaw, and Hunegnaw Enterprises, LLC.  Parmater brought claims individually, and on behalf of "nominal plaintiff" GJ Inc., for conversion, breach of fiduciary duty, misappropriation of corporate opportunity, civil conspiracy, trademark infringement, deceptive trade practices, unfair competition, and unjust enrichment.  Parmater notes in the complaint that "GrooveJob.com is a Plaintiff in this case only to the extent necessary to provide the relief sought herein. * * * Parmater has brought this action individually and, in the alternative, on behalf of GrooveJob.com to assist in the winding up of its affairs." (R. 9, Complaint, 3, fn. 1.)

{¶ 6}  Parmater moved for default judgment on June 13, 2014 with respect to all claims against Hunegnaw for his failure to appear in the case.  The trial court granted default judgment against Hunegnaw and awarded Parmater approximately $1.3 million in damages.  Internet Brands filed two motions for partial summary judgment; one with respect to Parmater's claims brought on behalf of "nominal plaintiff" GJ Inc., and another with respect to Parmater's individual claims.  On January 28, 2014, the trial court granted both motions for summary judgment.  Parmater timely appealed.

---

[1] After Internet Brands purchased the website and its related assets, GJ LLC was renamed Hunegnaw Enterprises, LLC.

## II. Assignments of Error

{¶ 7}   Parmater assigns the following three errors for our review:

> [1.] The Trial Court Erred In Granting Internet Brands' Motion for Partial Summary Judgment (June 25, 2013) Against Mr. Parmater's Claims On Behalf of GJ INC.
>
> [2.] The Trial Court Erred In Granting Internet Brands' Motion [For] Summary Judgment (November 19, 2013) Against Mr. Parmater's Individual Claims.
>
> [3.] The Trial Court Erred In Denying [Mr. Parmater's] Motion to Compel (December 3, 2013).

## III. Discussion

{¶ 8}   In Parmater's first and second assignments of error, he argues the trial court erred in granting Internet Brands' motions for summary judgment with respect to both Parmater's individual claims and those claims brought on behalf of "nominal plaintiff" GJ Inc.

{¶ 9}   An appellate court reviews a summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995).  Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C).

{¶ 10}  Under Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to support the nonmoving party's claims.  *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.  *Dresher* at 293; Civ.R. 56(E).

**A. First Assignment of Error – Claims by "nominal plaintiff" GJ Inc.**

{¶ 11} In his first assignment of error, Parmater argues the trial court erroneously concluded "nominal plaintiff" GJ Inc. did not have standing to bring claims against Internet Brands. Specifically, Parmater argues three separate grounds for his claim that even though the secretary of state canceled GJ Inc.'s articles of incorporation, Parmater may still bring claims on behalf of GJ Inc. We disagree.

{¶ 12} First, Parmater argues for the first time on appeal that the cancelation of GJ Inc.'s articles of incorporation does not equate to a cancelation of the corporation itself and cites *Eversman v. Ray Shipman Co.*, 115 Ohio St. 269 (1926) in support of this argument. Because Parmater failed to raise this argument before the trial court, he has waived it for purposes of appeal. *Rhoades v. Chase Bank*, 10th Dist. No. 10AP-469, 2010-Ohio-6537, ¶ 24, citing *State ex rel. O'Brien v. Messina*, 10th Dist. No. 10AP-37, 2010-Ohio-4741, ¶ 17, citing *Porter Drywall, Inc. v. Nations Constr., LLC*, 10th Dist. No. 07AP-726, 2008-Ohio-1512, ¶ 11, citing *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.

{¶ 13} Second, Parmater argues that under R.C. 1701.88, he was authorized to bring claims on behalf of GJ Inc. as part of the "winding up" of GJ Inc.'s corporate affairs. At the time of the purchase agreement, R.C. 1701.88(A) provided, in part, that:

> When a corporation is dissolved voluntarily, when the articles of a corporation have been canceled, or when the period of existence of the corporation specified in its articles has expired, the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, or to obtain reinstatement of the articles * * * and for such purposes it shall continue as a corporation.[2]

*See also Columbia Real Estate Title Ins. v. Columbia Title Agency, Inc.*, 11 Ohio App.3d 284 (10th Dist.1983); *Buckeye Power Sales Co. v. Hightower*, 10th Dist. No. 92AP-196 (July 2, 1992) ("Under R.C. 1701.88(A), when the articles of incorporation are canceled by

---

[2] Before the trial court, both the parties and the court itself relied on the current version of R.C. 1701.88(A), which provides a five-year period for a canceled corporation to "wind up its affairs"; a provision not in the version of the statute at the time of the purchase agreement. Parmater now argues the court improperly relied on the previous version. However, regardless of the version relied on, the outcome would not change because Parmater's claims brought on behalf of "nominal plaintiff" GJ Inc. were not for the purpose of winding up corporate affairs, a limitation present in both versions of R.C. 1701.88(A).

the Secretary of State or otherwise, the authority of the corporation to do business ceases.").

{¶ 14} Winding up affairs is "the process of settling the accounts and liquidating the assets of a partnership or corporation, for the purpose of making distribution of net assets to shareholders or partners and dissolving the concern." *Consol. Freightways Corp. v. Allred*, 10th Dist. No. 91AP-747 (Dec. 10, 1991), citing *Black's Law Dictionary* (5th Ed.1979). When winding up corporate affairs, R.C. 1701.88(D) provided that the "directors of the corporation and their successors shall act as a board of directors * * * until the affairs of the corporation are completely wound up. * * * [T]he directors shall proceed as speedily as is practicable to a complete winding up of the affairs of the corporation [and] * * * may exercise all the authority of the corporation."

{¶ 15} Even if Parmater was attempting to wind up the affairs of GJ Inc. through this lawsuit, he has no authority to do so. Parmater was removed from the board of directors, as well as his position as vice president, in August 2002. Indeed, Parmater concedes that because he was removed from his positions, he "was without authority to take action to reinstate GJ Inc." (Parmater's brief, 19.) Because Parmater is not a director or successor, he has no authority to wind up corporate affairs on GJ Inc.'s behalf.

{¶ 16} Third, Parmater argues that under R.C. 1701.13(H), Internet Brands was not a party entitled to challenge Parmater's authority to maintain a claim. R.C. 1701.13(H) provides:

> No lack of, or limitation upon, the authority of a corporation shall be asserted in any action except (1) by the state in an action by it against the corporation, (2) by or on behalf of the corporation against a director, an officer, or any shareholder as such, (3) by a shareholder as such or by or on behalf of the holders of shares of any class against the corporation, a director, an officer, or any shareholder as such, or (4) in an action involving an alleged overissue of shares. This division shall apply to any action brought in this state upon any contract made in this state by a foreign corporation.

However, once a corporation has been canceled, as GJ Inc. had been, R.C. 1701.13(H) is inapplicable. *See Mack Constr. Dev. Corp. v. Austin Smith Constr. Co.*, 65 Ohio App.3d 402 (12th Dist.1989); *Superior Piping Contrs., Inc. v. Reilly Industries, Inc.*, 8th Dist. No. 82567, 2003-Ohio-6347, ¶ 17-21.

{¶ 17} Because GJ Inc.'s cancellation precludes any action by the corporation except winding up its affairs and because Parmater is not authorized to wind up GJ Inc.'s affairs, we find the trial court did not err in granting Internet Brands' motion for summary judgment with respect to those claims Parmater brought on behalf of "nominal plaintiff" GJ Inc.  Accordingly, we overrule Parmater's first assignment of error.

## B. Second Assignment of Error – Parmater's Individual Claims

{¶ 18}  In his second assignment of error, Parmater asserts that the trial court erred in finding Internet Brands was entitled to summary judgment with respect to Parmater's individual claims.[3]  We disagree.

## 1. Conversion

{¶ 19} On appeal, Parmater argues that by entering the purchase agreement, Internet Brands converted GJ Inc.'s assets, and, as a shareholder, Parmater can bring a claim for conversion against Internet Brands.

{¶ 20} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights."  *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). To succeed on a claim for conversion, a plaintiff must show (1) actual or constructive possession, or an immediate right to possession of the property, (2) a defendant's wrongful interference with plaintiff's right to possession, and (3) damages.  *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-929, 2012-Ohio-1378, ¶ 8, citing *Dice v. White Family Cos., Inc.*, 173 Ohio App.3d 472, 2007-Ohio-5755, ¶ 17 (2nd Dist.). Here, there is no evidence Parmater has established any of the three elements.

{¶ 21}  Parmater asserts that by entering the purchase agreement, Internet Brands wrongfully interfered with his right to possession of the GrooveJob.com website. Parmater claims the purchase agreement itself "constitutes a wrongful act by Internet Brands, in * * * combination with Hunegnaw Enterprises and Hunegnaw."  (R. 9, ¶ 49.)

---

[3] Parmater initially argues that as a minority shareholder of a close corporation he may bring an action directly against the majority shareholder for a breach of a heightened fiduciary duty and that we should extend that right to bring claims against Internet Brands.  While both parties briefed this issue, Parmater conceded before the trial court that the Supreme Court of Ohio's decision in *DeVries Dairy L.L.C. v. White Eagle Coop. Assn., Inc.*, 132 Ohio St.3d 516, 2012-Ohio-3828, precludes him from asserting his claims for breach of fiduciary duty and misappropriation of corporate opportunity against Internet Brands.  Accordingly, the trial court found Parmater had dismissed these claims, rendering them moot. (R. 91, Jan. 28, 2014 Decision and Entry, 6.)

However, the purchase agreement itself contains no evidence of any wrongful interference by Internet Brands. Furthermore, Parmater has provided no evidence of any wrongful acts by Internet Brands. When asked what acts Internet Brands, Hunegnaw, and GJ LLC committed to deprive him of any assets, Parmater responded, "I don't have any specific acts." (Parmater Deposition, 93.) Parmater testified at deposition that he had no knowledge of any wrongful act of Internet Brands, nor did he know of any way Internet Brands was acting to injure him. Because Parmater cannot point to specific facts demonstrating Internet Brands interfered with Parmater's right to possession of the website, his conversion claim fails and we need not address the other elements of his conversion claim.

## 2. Unfair Trade Practices: Trademark Infringement, Deceptive Trade Practices, and Unfair Competition

{¶ 22} Parmater argues that by entering the purchase agreement and operating the website, Internet Brands is liable for trademark infringement, deceptive trade practices, and unfair competition. Parmater also asserts he, individually, has an ownership interest in the website and its related intellectual property assets. More specifically, Parmater contends he granted GJ Inc. a "non-exclusive license" and because there is no evidence of a written transfer of his ownership interest in unspecified "copyrighted material" from Parmater to GJ Inc., under federal law, he continues to own all such rights in the "copyrighted material." As explained below, these claims fail.

{¶ 23} Parmater has presented no evidence or any specific facts that he has any ownership interest in the trademarks or copyrights associated with GJ Inc. or the website. To the contrary, the evidence in the record demonstrates that any trademarks and copyrights were the property of GJ Inc. In his complaint, Parmater alleged that GJ Inc. "[owned], and continues to own" the website and its "Related Assets." (R. 9, ¶ 11.) Parmater defines "Related Assets" to include proprietary information and intellectual property such as "copyright, tradenames, trademarks, service marks, trade dress and trade secrets." (R. 9, ¶ 10.) Further, Parmater stated at his August 2013 deposition that it was his understanding he did not own any copyrighted material related to the website. Parmater testified that in late 2001 or January 2002, he attempted to register a copyright related to the website. Internet Brands' counsel then asked, "Were you filing that on your

own personal behalf or on behalf of the GrooveJob.com Inc. entity"? Parmater responded, "GrooveJob.com, Inc." (Parmater Deposition, 51.) Parmater reaffirmed this understanding when asked whether he believed he personally owned the copyright interests, stating that "GrooveJob.com [Inc.] owned them and I'm a major shareholder in the company." (Parmater Deposition, 56.) Therefore, we find Parmater has presented no specific evidence that would create an issue of material fact as to GJ Inc.'s ownership of the website's trademarks and copyrights. Accordingly, Internet Brands is entitled to judgment as a matter of law on Parmater's trademark infringement claim.

{¶ 24} Claims for unfair and deceptive trade practices turn on " 'whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.' " *Reed Elsevier, Inc. v. TheLaw.net Corp.,* 269 F.Supp.2d 942, 951 (S.D.Ohio 2003), quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Cntr.,* 109 F.3d 275, 280 (6th Cir.1997). Here, Parmater bases his unfair competition and deceptive trade practice claims on his allegation that Internet Brands' continued and unauthorized use of the "GrooveJob.com" trademark is likely to cause consumer confusion and misunderstanding as to the origin, source, affiliation, or ownership of the website. (R. 9 at 18.) First, Parmater has not established any facts demonstrating consumer confusion. Parmater admitted as much during his deposition, testifying as follows:

> Q: Do you know of anyone in the world who has been confused about who owns or operates GrooveJob.com, the website?
>
> A: No. Me.
>
> Q: Anyone besides you?
>
> A: No.

(Parmater Deposition, 85.) Parmater offers nothing more than the broad allegation that "anyone that uses the Website is necessarily confused since plaintiffs are the true owners, not Internet Brands." (Emphasis sic.) (Parmater brief, 40.) Second, Parmater has presented no evidence Internet Brands has made any specific false or misleading statements with respect to the source, affiliation, or ownership of the website. Third, as discussed above, Parmater has presented no evidence of ownership of any trademarks or copyrights used by, or affiliated with, the website. Therefore, we find no set of facts that

would allow Parmater to recover under a claim of unfair competition or deceptive trade practices. Accordingly, the trial court did not err by granting summary judgment on Parmater's claims.

{¶ 25} Because there are no genuine issues of material fact, and Internet Brands is entitled to judgment as a matter of law, the trial court did not err in granting summary judgment with respect to Parmater's claims for trademark infringement, deceptive trade practices, and unfair competition.

## 3.  Unjust Enrichment

{¶ 26} Parmater next contends the trial court erred in granting summary judgment in favor of Internet Brands on Parmater's claim for unjust enrichment.

{¶ 27} Unjust enrichment presents a claim under quasi-contract law that arises out of the obligation to a party that receives benefits but is not justly and equitably entitled to retain.  *Hummel v. Hummel*, 133 Ohio St. 520, 527 (1938).  A claim of unjust enrichment requires the plaintiff to establish (1) a benefit was conferred by the plaintiff on a defendant, (2) knowledge by the defendant of the benefit conferred, and (3) the defendant's retention of the benefit under circumstances would be unjust without payment to the plaintiff.  *Alice's Home v. Childcraft Edn. Corp.*, 10th Dist. No. 09AP-299, 2010-Ohio-4121, ¶ 20, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).  Moreover, "[i]n absence of bad faith or fraud, an equitable action for unjust enrichment will not lie when the subject of the claim is governed by express contract." *Natl./RS, Inc. v. Huff*, 10th Dist. No. 10AP-306, 2010-Ohio-6530, ¶ 28, citing *Kucan v. Gen. Am. Life Ins. Co.*, 10th Dist. No. 01AP-1099, 2002-Ohio-4290 ¶ 39.

{¶ 28} Here, Parmater has provided no evidence establishing that Internet Brands was aware of any benefit Parmater conferred or that Internet Brands' retention of the website would be unjust.  The purchase agreement never mentions Parmater or GJ Inc., likely because the secretary of state canceled GJ Inc. before Internet Brands entered into the purchase agreement.  Further, under the purchase agreement, Internet Brands paid the owner of GJ LLC, Hunegnaw, $850,000.00 for the website.  To the extent Hunegnaw was unjustly enriched, the trial court awarded Parmater $1,304,851.29 against Hunegnaw for the same claims he is now asserting against Internet Brands.

{¶ 29} Because Parmater has failed to establish he conferred a benefit upon Internet Brands, that Internet Brands was aware of any alleged benefit, or that Internet Brands' retention of the website would be unjust, Parmater's unjust enrichment claim fails. Accordingly, the trial court did not err in granting summary judgment with respect to this claim.

**4. Civil Conspiracy**

{¶ 30} Parmater asserts that Internet Brands is liable for civil conspiracy because it entered the purchase agreement with Hunegnaw. Parmater argues the purchase agreement is evidence of either an express agreement, or, at least, a common understanding or design to commit unlawful acts. We disagree.

{¶ 31} Civil conspiracy is an intentional tort that is " ' "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." ' " *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 40 (10th Dist.), quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). Civil conspiracy is derivative and the claim "cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Id.*; *see also Walter v. ADT Security Sys., Inc.*, 10th Dist. No. 06AP-115, 2007-Ohio-3324, ¶ 36. Because Parmater has failed to establish the existence of any of the underlying torts alleged above, his civil conspiracy claim, likewise, must fail.

{¶ 32} We conclude that the trial court properly granted summary judgment in favor of Internet Brands on Parmater's individual claims and we overrule his second assignment of error.

**C. Third Assignment of Error – Motion to Compel Discovery**

{¶ 33} In his third assignment of error, Parmater contends the trial court erred when it denied his motion to compel. A party may move for an order compelling discovery. Civ.R. 37(A). Under Civ.R. 26(B)(1), the scope of pretrial discovery is broad and parties may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter. However, trial courts "possess broad discretion over the discovery process," and, therefore, appellate courts "generally review a trial court's decision regarding a discovery matter only for an abuse of discretion." *MA Equip.*

*Leasing I, L.L.C. v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 13. An abuse of discretion implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 34} Parmater's motion to compel related to the following two document requests:

> All documents and information related to the ownership of the [GrooveJob.com] Website and Related Assets that were subject to the Sale Agreement, including but not limited to the Trademarks associated with the [GrooveJob.com] Website and Related Assets.
>
> * * *
>
> All documents and information related to and/or evidencing Internet Brands' use of the [GrooveJob.com] Website and Related Assets that were subject to the Sale Agreement, including but not limited to the Trademarks associated with the [GrooveJob.com] Website and Related Assets.

(R. 64, Parmater's Motion to Compel, exhibit A, ¶ 19-21.)

{¶ 35} Parmater later limited the requests to "revenue and expense information related to Internet Brands' ownership and use of the [GrooveJob.com] website since the Sale Agreement." (R. 64, exhibit B.) At deposition, Internet Brands' corporate representative, Barbara Lynn Walsh, testified the company operates over 200 websites, and, because the company does not record expenses by individual website, there is no readily available documentation to determine how much a particular website costs to run. Walsh further explained that in order to determine revenue by a particular website, it would be necessary to review and analyze data across Internet Brands' "general financial systems." (Walsh Deposition, 93.) Walsh concluded that recovering the revenue and expense data for just the GrooveJob.com website would require "extraordinary effort." (R. 66, at 93.) Based on the discovery requests and above testimony, the trial court concluded that the requests were overly broad and denied Parmater's motion to compel. We cannot find that the trial court abused its discretion in denying Parmater's motion. Accordingly, Parmater's third assignment of error is overruled.

## IV. Disposition

{¶ 36} The trial court did not err in granting Internet Brands' motions for summary judgment, and the trial court did not abuse its discretion in denying Parmater's motion to compel discovery.  Having overruled Parmater's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*


TYACK and BROWN, JJ., concur.

———————————