OPINION
{¶ 1} Defendant-appellant, Laura L. Mathias ("appellant"), appeals from her conviction by the Franklin County Municipal Court. For the reasons we detail below, we affirm.
 {¶ 2} On June 7, 2006, Eric Weber filed a criminal complaint against appellant, alleging that, on May 23, 2006, appellant stole a DeWalt tool valued at $259 from a *Page 2 
Lowe's store on Brice Road in Columbus, Ohio. A jury trial commenced on October 2, 2006.
 {¶ 3} Plaintiff-appellee, State of Ohio ("appellee"), called Eric Weber as a witness. Weber testified that he worked at Lowe's as a loss prevention manager, and, in that capacity, he is responsible for ensuring the safety and security of the store.
 {¶ 4} Weber stated that, on May 23, 2006, he observed a man selecting a DeWalt tool, paying for it in the lumber department, and exiting the store. Shortly thereafter, he observed a woman, identified as appellant, enter the store, select the same type of DeWalt tool, shop for additional items, and then proceed to a cashier in the outdoor lawn and garden area. Appellant's shopping cart contained a DeWalt 4 tool combo kit, a DeWalt drill, and two other items. She produced two receipts: a May 20, 2006 receipt for the tool combo kit and a May 23, 2006 receipt for the drill. The cashier did not allow appellant to leave the store with the tool combo kit, but he did allow appellant to leave the store without paying for the drill. Appellant paid for the remaining two items. When Weber stopped appellant and questioned her about the drill, she "stated that her boyfriend had paid for it, that particular item, and had gotten mad and left it in the store and asked her to come back in for it." (Tr. at 31.)
 {¶ 5} Appellee presented a portion of the store's surveillance video from May 23, 2006. From the video, Weber identified the man purchasing the DeWalt drill and noted the time as 5:29 p.m. and 41 seconds. At 5:36 p.m., appellant entered the store and, about ten minutes later, attempted to leave the store with the drill by presenting a receipt with a date and time of May 23, 2006, at 5:30 p.m. *Page 3 
 {¶ 6} Weber stated that he gave appellant an opportunity to write out her version of what happened. He confirmed that appellant "wrote out that basically her boyfriend had come in and that she didn't know what was going on." (Tr. at 65.)
 {¶ 7} Mike Smith testified that he was a loss prevention manager for Lowe's and happened to be at the Brice Road store on May 23, 2006. He testified that he was a passenger in a car entering the store's parking lot, when he observed a man walking out of the lumber doors carrying a DeWalt drill and receipt. Smith testified:
 As he was walking to his vehicle, he was waiving his receipt, which is what caught our eyes at the time. And then, as he was approaching his vehicle, directly parked in front of him was another vehicle at which time a female subject got out of the vehicle. He placed the drill in the back seat of his car and handed off the receipt to her.
(Tr. at 70-71.) Smith identified the woman in the vehicle as appellant. Smith then called Eric Weber inside the store and alerted him to appellant's presence.
 {¶ 8} Smith was with Weber when appellant explained her actions. He confirmed Weber's testimony that appellant "was told by, at the time I believe it was her boyfriend, who was the subject out in the parking lot, to come inside and gain control of the tools." (Tr. at 75.) He also confirmed that the store's incident report notes that appellant asked them to contact her boyfriend.
 {¶ 9} Upon questioning, Smith agreed that, if an individual left a store in anger and another individual went back to the store to retrieve an item the first individual had purchased, no crime would have occurred. When asked why no one tried to confirm appellant's statement that her boyfriend told her to retrieve the drill, Smith testified that follow-up was unnecessary because he had already observed the man purchase the drill and give appellant the receipt. Smith stated that the man who initially purchased *Page 4 
the drill was simply a customer and not a "person of interest" because he had paid for his purchase. (Tr. at 92.)
 {¶ 10} James Collins testified that he is the area loss prevention manager for Lowe's. On May 23, 2006, he and Smith had been traveling among stores in the Columbus area, and they were returning to the Brice Road store at about 5:30 p.m. After he pulled into the parking lot, he observed a man walk out of the lumber exit carrying a DeWalt drill. When asked what drew his attention, Collins testified: "It was a very bright yellow box, and DeWalt drills, for Lowe's, that's one of our highest theft items that we carry." (Tr. at 153.) He also stated that the man was carrying a receipt in one hand and the drill in the other, and he was waving the receipt toward a woman (identified as appellant) watching him from a white truck. According to Collins, the man walked to a car parked behind the white truck, put the drill in the back of the car, and handed the receipt to appellant. Collins also testified that this pattern of behavior, i.e., one person buying an item and then passing off a receipt to someone else, was common, in his experience. Collins confirmed, however, that there could be an honest reason for someone to re-enter the store with a receipt and obtain the same item.
 {¶ 11} Following Collins' testimony, appellee rested. Appellant moved for acquittal under Crim.R. 29, and the court denied the motion. Appellant presented no witnesses.
 {¶ 12} During closing arguments, appellee's counsel took issue with appellant's explanation for her actions and referenced that explanation several times. Appellee's counsel also referenced appellant's attempt to leave the Lowe's store on May 23 with *Page 5 
the item identified on the May 20 receipt. Counsel suggested that appellant "was trying to steal the item from the 20th." (Tr. at 205.)
 {¶ 13} Appellant's counsel responded to both points in his closing argument. He stated that appellant could have explained her boyfriend's actions to the cashier, but appellee did not call the cashier as a witness, no one from Lowe's ever questioned the cashier, and no one ever called to discuss the matter with appellant's boyfriend. Without this evidence, counsel argued, appellee did not prove that appellant "knowingly" took the drill. Counsel also sought to deflect attention from appellant's attempt to remove the item identified on the May 20 receipt, stating that the issue was a "red herring." (Tr. at 212.)
 {¶ 14} After deliberation, the jury found appellant guilty of theft. Appellant filed a timely appeal from her conviction, and she raises the following assignments of error:
 [I.] THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF [APPELLANT] BY NOT ADMITTING THE WRITTEN STATEMENT OF FACTS MARKED AS STATE'S EXHIBIT 3 (CITY'S EXHIBIT 3) TO ADEQUATELY EXPLAIN [APPELLANT'S] STATE OF MIND AND AS AN EXCEPTION UNDER THE HEARSAY RULE.
 [II.] THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF [APPELLANT] BY NOT ADMITTING DEFENSE EXHIBIT B THE MISTAKE OF FACT REQUESTED IN THE JURY INSTRUCTIONS TO THE DETRIMENT OF [APPELLANT].
 [III.] THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF [APPELLANT] IN ALLOWING SUBMISSION OF STATE'S EXHIBIT TWO (2) (CITY'S EXHIBIT 2), WHICH PROMOTED BIAS AND PREJUDICE TO THE TRIER OF FACT TO THE DETRIMENT OF [APPELLANT].
 [IV] THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY ALLOWING [T]HE PROSECUTION TO INCLUDE *Page 6 
HYPOTHETICAL STATEMENTS OF WITNESS IN AN EXPERT CAPACITY AND DENIED THE DEFENSE THE SAME INCLUSION OF HYPOTHETICAL STATEMENTS OF THE SAME WITNESS IN THE SAME CAPACITY AS AN EXPERT.
 [V] THE TRIAL COURT ERRED, AS A MATTER OF LAW, TO THE PREJUDICE OF [APPELLANT] IN THAT [APPELLANT] DID NOT RECEIVE A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 15} In her first assignment of error, appellant asserts that the trial court erred when it denied appellant's attempt to admit into evidence the statement she wrote and gave to the Lowe's loss prevention officers on May 23, 2006. A trial court has broad discretion in admitting and excluding evidence, and we will not disturb the court's ruling in that respect unless the court has clearly abused its discretion. Jelinek v. Abbott Laboratories, 164 Ohio App.3d 607,2005-Ohio-5696, at ¶ 51. An abuse of discretion connotes more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. We find no such abuse of discretion here.
 {¶ 16} At trial, appellee's counsel questioned Eric Weber about a document identified as State's Exhibit 3. Weber identified it as a Lowe's loss prevention form entitled "Statement of Facts." (Tr. at 3.) In essence, it is appellant's explanation for her actions in the store that day. While appellee sought to use it only for purposes of Weber's testimony, appellant wanted the statement admitted into evidence. Appellee objected on the ground that it is self-serving and, if offered for the truth, also hearsay. Appellant's counsel responded that the statement would be offered to show appellant's state of mind, not for its truth. The court denied its admission. *Page 7 
 {¶ 17} The rules of evidence prohibit the admission of hearsay, that is, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 803(3) provides one of the exceptions to the hearsay rule, the then existing mental, emotional or physical condition exception. Evid.R. 803(3) defines such a statement as:
 * * * A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
 {¶ 18} We agree with the trial court that the Statement of Facts is hearsay, as it is an out-of-court statement offered to prove the truth of appellant's explanation for why she entered the store and used the receipt her boyfriend gave her to retrieve the drill. The statement does not fall within the mental condition exception to the hearsay rule because it is "a statement of * * * belief to prove the fact * * * believed."
 {¶ 19} In addition, the court's exclusion of the statement did not prejudice appellant. Weber and Smith both testified concerning the statement, and numerous references were made throughout the trial concerning appellant's assertion that her boyfriend told her to re-enter the store and retrieve the drill using the receipt he gave her. Thus, the jury was well aware of appellant's version of what occurred, and admission of her actual statement would have been duplicative. Therefore, we overrule appellant's first assignment of error. *Page 8 
 {¶ 20} In her second assignment of error, appellant asserts that the trial court erred when it denied her request for a jury instruction concerning her mistake of fact. Appellant wanted the court to give the following instruction: *Page 9 
 409.03 Mistake of fact
 1. Unless the defendant had the required knowledge she is not guilty of the crime of theft.
 2. In determining whether the defendant had the required knowledge you will consider whether she acted under a mistake of fact regarding the theft.
 3. If the defendant had an honest belief arrived at in good faith in the existence of such facts and acted in accordance with the facts as she believed them to be, she is not guilty of theft as knowledge is an essential element of the offense of theft.
(Defendant's Exh. B.)
 {¶ 21} However, we agree with appellee that the substance of the instruction proposed by appellant was substantially contained within the general instructions the trial court provided. Specifically, when instructing the jury about the meaning of "knowingly," the court stated: "You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that the DeWalt tool that she removed from Lowe's had not previously been paid for." (Tr. at 223.) When instructing the jury about the meaning of "purposely," the court stated: "It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to deprive Lowe's of this DeWalt tool." (Tr. at 223.)
 {¶ 22} We will not reverse a criminal conviction on the ground of improper or incomplete jury instructions unless the jury instructions result in prejudice to the defendant. State v. DeHass (1967),10 Ohio St.2d 230, paragraph two of the syllabus; State v. Shue (1994),97 Ohio App.3d 459, 471. A trial court does not commit prejudicial error in a criminal case when it fails to give a proposed instruction that is *Page 10 
covered in the court's general charge to the jury. State v. Sneed
(1992), 63 Ohio St.3d 3, 9-10; State v. Dotson (Nov. 6, 1990), Franklin App. No. 90AP-261. Having concluded that the trial court's general charge to the jury covered the substance of the proposed instruction, we conclude that appellant suffered no prejudice. Accordingly, we overrule appellant's second assignment of error.
 {¶ 23} In her third assignment of error, appellant asserts that the trial court erred in allowing the admission of State's Exhibit 1, the May 20, 2006 receipt. Appellant asserts that the receipt was hearsay and used to bias the jury against appellant. Both parties agree that appellant's counsel did not object to the receipt's admission, and, therefore, a plain error standard of review applies. Crim.R. 52(B). Under this standard, we notice a plain error only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 94-95. However, we find no error here, plain or otherwise.
 {¶ 24} Evid.R. 404(B) (as it existed at the time of trial) provided, in pertinent part:
 (B) Other crimes, wrongs or acts
 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Baldwin's Ohio Revised Code Annotated (2000) 236.
 {¶ 25} R.C. 2945.59 similarly provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are *Page 11 
contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
 {¶ 26} Thus, as a general rule, evidence of a defendant's independent criminal acts is inadmissible. However, such evidence is admissible if it relates factually or chronologically to the acts alleged in the indictment or if the evidence forms the immediate background for the crimes charged. State v. Thompson (1981), 66 Ohio St.2d 496, 497. Evidence of other acts is also admissible when they are so blended or connected with the one on trial that proof of one incidentally involves the other. State v. Wilkinson (1980), 64 Ohio St.2d 308, 315.
 {¶ 27} Here, the May 20, 2006 receipt, as well as the evidence showing appellant's attempted use of that receipt to retrieve a DeWalt tool combo kit on May 23, 2006, without paying for it, was evidence of appellant's intent to steal the DeWalt drill for which she was convicted. Weber testified that a May 20, 2006 surveillance showed appellant purchasing the tool combo kit, and that appellant attempted to use the May 20, 2006 receipt to retrieve another tool combo kit on May 23 without paying for it. Such evidence directly refutes appellant's defense that she mistakenly believed that her boyfriend had already paid for the drill she took from the store on May 23 and supports appellee's theory of a common plan to steal both items. Therefore, the receipt was admissible under Evid.R. 404(B) and R.C. 2945.59. Having found no error in the trial court's admission of the May 20, 2006 receipt, we overrule appellant's third assignment of error.
 {¶ 28} In her fourth assignment of error, appellant asserts that the trial court erred by allowing appellee's counsel to ask hypothetical questions to an expert, and *Page 12 
then not allowing appellant's counsel to do the same. Appellant directs our attention to Collins' testimony, during which appellee's counsel asked the following:
 Assuming a situation like the one I'm proposing here, where a person buys an item and takes the receipt out and gives it to somebody else and the other person comes back in and tries to remove that same item, is there a common term in loss prevention — is there another word for it?
(Tr. at 160.)
 {¶ 29} Appellant's counsel objected to the question on the grounds that it called for speculation. In response, appellee's counsel argued that her purpose was to determine whether this was a common method of stealing. The court overruled the objection. Collins responded that the use of a receipt to retrieve an item without paying is a common method for theft. In response to follow-up questions, Collins then explained why he was initially suspicious when appellant's boyfriend came out of the store waving a receipt.
 {¶ 30} Before this court, appellant does not assert that the court erred in overruling this objection. Rather, she asserts that the court did not afford appellant's counsel the same latitude. In support, she directs our attention to defense counsel's attempt to ask Collins the following:
 * * * Hypothetically, if a person came into your store with * * * a receipt and picked up a DeWalt drill and told a cashier, [m]y boyfriend paid for this, he got mad, he stormed out of the store because they wouldn't let him open it to examine it, I'm here to pick it up because he already paid for it[.]
(Tr. at 176.)
 {¶ 31} At that point, appellee's counsel objected on grounds that the hypothetical question would allow Collins to testify to appellant's defense theory. Appellant's counsel *Page 13 
responded that appellee's counsel had qualified Collins as an expert and had been allowed to ask Collins hypothetical questions. The court responded that Collins had not been qualified as an expert and that the prosecution's questions went to the evidence that had already been offered. Because appellant's counsel had posed a hypothetical, the court sustained the objection.
 {¶ 32} In challenging the court's exclusion of this hypothetical question, appellant offers no argument that the court should have allowed the question and no precedent supporting such an argument. Instead, appellant simply argues that the trial court should have afforded counsel for appellant and appellee the same latitude. However, our review of the record shows no bias in favor of appellee's counsel. In fact, a short time after sustaining appellee's objection to appellant's question, appellee's counsel attempted to ask Collins a hypothetical question, appellant's counsel objected, and the court sustained the objection. See Tr. at 178-179.
 {¶ 33} In addition, we find no prejudice as a result of the court's exclusion of this hypothetical question. As we noted previously, numerous witnesses referred to appellant's explanation that her boyfriend had instructed her to re-enter the store and retrieve the drill, as well as the loss prevention managers' decision not to question or contact her boyfriend about the explanation. In particular, appellant's counsel questioned Collins extensively concerning the possibility that an individual could have an honest reason for attempting to retrieve an item with a receipt, and Collins admitted that there could be an honest reason for doing so. See Tr. at 167-169. Therefore, whether error or not, exclusion of the hypothetical question resulted in no prejudice to appellant. Accordingly, we overrule appellant's fourth assignment of error. *Page 14 
 {¶ 34} In her fifth assignment of error, appellant asserts that her trial counsel rendered ineffective assistance. The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 35} Here, appellant argues that her two trial attorneys were deficient in two respects: (1) they failed to object to admission of the May 20, 2006 receipt; and (2) they failed to subpoena appellant's boyfriend as a witness. As to the first issue, we reject appellant's assertion that her counsel should have objected to the admission of the May 20, 2006 receipt because we have already determined that the receipt was admissible. We turn, then, to appellant's assertion that her counsel should have subpoenaed her boyfriend.
 {¶ 36} In general, decisions to call witnesses are within the purview of defense counsel's trial strategy. Absent a showing of prejudice, we will not consider such decisions as deficient performance. State v.Dennis, Franklin App. No. 04AP-595, 2005-Ohio-1530, at ¶ 22, citingState v. Hunt (1984), 20 Ohio App.3d 310, 312. An appellant has the burden to show that the witness' testimony would have significantly assisted the defense and would have affected the outcome of the case.Dennis at ¶ 22, *Page 15 
citing State v. Reese (1982), 8 Ohio App.3d 202, 203. Otherwise, counsel's failure to call a witness does not establish ineffective assistance. Dennis at ¶ 22, citing Reese and Hunt.
 {¶ 37} Here, we have no basis on which to conclude that testimony from appellant's boyfriend would have been helpful to her defense, nor does appellant offer any. There is nothing in the record to suggest that the boyfriend's absence was due to counsel's failure to subpoena him or that counsel failed to question him to determine his usefulness. Rather, we can only conclude from the record before us that counsel's decision not to call or subpoena appellant's boyfriend as a witness was the result of reasonable trial strategy. Moreover, we note that appellant's two trial counsel were well-prepared to proceed with trial and that they provided appellant a vigorous defense. Therefore, we reject appellant's assertion that they were ineffective, and we overrule her fifth assignment of error.
 {¶ 38} In summary, we overrule appellant's first, second, third, fourth, and fifth assignments of error. Accordingly, we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
 BROWN and KLATT, JJ., concur. *Page 1